DECISION AND JUDGMENT ENTRY
{¶ 1} Garnishee, Roger Tong ("Tong"), appeals the Jackson County Municipal Court's decision finding him in contempt of court and sentencing him to thirty days in jail, a $250 fine, plus the costs of the action, and ordering him to pay Oak Hill Bank ("Bank") $1,479.43. Tong contends that the trial court found him in indirect criminal contempt in violation of his constitutional right to due process. Because we find that the fine, costs of the action, and $1,479.43 payment in lieu of garnishment are civil penalties, and there was ample evidence in the record to support the trial court's finding of civil contempt, we find that the trial court did not abuse its discretion in imposing them. However, to the extent that the trial court sentenced Tong to an unconditional thirty days in jail, we agree with his assignment of error. Accordingly, we affirm the decision in part, reverse in part, and remand this case for further proceedings consistent with this opinion.
 I. {¶ 2} In July 1995, Bank obtained a judgment against Shannon R. Ison ("Ison"), in the amount of $4,514.28 plus interest at the rate of 9.26% per annum. Unable to collect the debt from Ison, the Bank learned that Ison was working for Tong. Accordingly, in March 2002, the Bank initiated proceedings against Tong to garnish Ison's wages. Tong filed an answer, wherein he stated "[t]he Judgment Debtor is in my/our employ." Thereafter, in compliance with the garnishment order, Tong filed six interim reports and answers, stating Ison's earnings for the individual pay periods, and submitted payments totaling $949.84, that were purportedly withheld from Ison's personal earnings. Despite the continuing garnishment order, Tong ceased making his interim reports and answers, and sending payments to the trial court after July 19, 2002.
 {¶ 3} The Bank filed a motion for a show cause order on November 8, 2002 seeking to hold Tong in contempt for his failure to file an answer to the garnishment, and requesting a special examination. The certificate of service on the motion indicates that counsel for the Bank served Tong with a copy of the motion by regular U.S. mail. The order, filed on December 17, 2002, set the hearing for January 30, 2003. The return of service reflects that the process server personally served Tong with the order on December 31, 2002.
 {¶ 4} Tong appeared at the January 30, 2003 hearing pro se. At the hearing, the court heard testimony from Rebecca Quesenberry, a Bank representative, and Tong. Ms. Quesenberry testified that as of the date of hearing, the principal balance of the debt was $1,833.18. She further testified that the Bank had not received a garnishment payment from Tong since July 26, 2002, nor had the Bank received any written notice from Tong, or the court regarding any change in Ison's employment status.
 {¶ 5} Tong testified that in his answer to the garnishment, he marked that Ison was an employee. He also testified that, at the time of the hearing, Ison was no longer an employee because Tong laid him off in December 2002. Tong further testified that he had never garnished Ison's wages. Rather, he chose to calculate the amount properly garnished from Ison's wages, and then paid it out of his own pocket as a favor to Ison.
 {¶ 6} At the conclusion of the hearing, the trial court informed Tong that he was to produce information to the court regarding Ison's wages, and that if he failed to do so, he could be fined $250 and sentenced to thirty days in jail, or that he could be imprisoned until he abided by the trial court's order. At that time, Tong asked if he could avoid producing Ison's payroll information if he simply got a check and paid the balance due. The court responded, "No. Because at this point, you've thumbed your nose at me. Because, the Court, not Oak Hill Banks, but the Court ordered you to do certain things, and you failed to do it. So I'm telling you what I want. From that information, I will do the calculations and determine how much you should of paid Oak Hill Banks."
 {¶ 7} By a decision and entry, filed February 3, 2003, the trial court found Tong in contempt of court, presumably for failing to garnish Ison's wages and submit the garnished wages to the court. The trial court then ordered Tong to provide documentation of Ison's weekly wages from March 28, 2002 through December 31, 2002 to assist the court in calculating Tong's liability for failing to properly garnish Ison's wages. The information ordered by the court included: hours worked each week, hourly rate of pay, federal and state tax withholding, social security and medicare withholding. The order specified that Tong produce the information to the court by February 10, 2003 at 9:00 a.m., and in the event that Tong failed to provide the information as ordered by the court, he was to appear before the court on Tuesday, February 11, 2003 at 8:30 a.m. for further proceedings. The order further specified that Tong "will be subject to imprisonment until he complies with the order of the court." Additionally, the decision and entry specified that Tong was to pay Bank's attorney fees of $483.75 plus court costs in full, no later than March 10, 2003 at noon. Finally the decision provided "Roger Tong shall appear in the Municipal Court for sentencing regarding this contempt on March 17, 2003 at 8:30 a.m."
 {¶ 8} Tong failed to timely abide by the trial court's February 3, 2003 entry. Approximately six and one-half hours after the deadline, Tong delivered a copy of Ison's 2002 1099 form, along with an unsworn, handwritten note stating that "Shannon Ison is not an employee, he is a sub-contractor therefore there is no withholding information."
 {¶ 9} Tong appeared before the court on February 11, 2003, although the trial court did not afford him the opportunity to speak. The court issued a journal entry, finding that even if Ison was a sub-contractor, Tong was in possession of Ison's personal earnings. The court found that Ison would have the burden of raising issues of his business expenses and taxes, but that he did not raise these issues or object to the garnishment in any way. Accordingly, the trial court ordered Tong to pay the Bank $1,479.43 for the garnishment. Additionally, with regard to "the Contempt for failure to comply with a court order," the trial court sentenced Tong to thirty days in jail, plus a $250 fine and the costs of the action. The trial court then requested that the Deputy present in the courtroom escort Tong directly to the jail.
 {¶ 10} Tong timely appealed, raising one assignment of error: "The trial court erred to the prejudice of garnishee-appellant by finding him in indirect criminal contempt, sentencing him to thirty days in jail and a $250.00 fine and costs, and ordering him to pay $1,479.43 to the plaintiff-appellee, in violation of garnishee-appellant's Due Process rights and the procedural requirements of Ohio Revised Code § 2705.03."
 II. {¶ 11} Contempt is a disregard of, or disobedience to, an order or command of judicial authority. First Bank of Marietta v. Mascrete, Inc.
(1998), 125 Ohio App.3d 257, 263. We will not reverse a trial court's decision in a contempt proceeding unless that court abused its discretion. State ex rel. Ventrone v. Birkel (1981), 54 Ohio St.2d 461. An "abuse of discretion" connotes that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219; Booth v. Booth (1989), 44 Ohio St.3d 142,144.
 {¶ 12} We are not free to substitute our judgment for that of the trial court. In re Jane Doe I (1991), 57 Ohio St.3d 135, 137-38, citingBerk v. Matthews (1990), 53 Ohio St.3d 161, 169. In applying this standard of review, we give deference to the trial court as the trier of fact because it is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 13} Courts may classify contempt as either direct or indirect. Direct contempt involves "misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice." R.C. 2705.01. In contrast, indirect contempt involves acts occurring outside the presence of the court that demonstrate a lack of respect for the Court or its lawful orders. R.C. 2705.02. Acts in direct contempt of court may be summarily punished. R.C. 2705.01. However, when the contemptuous actions occur outside the presence of the court, the court must afford the accused a hearing, at which he will have an opportunity to be heard, by himself or counsel. R.C. 2705.03.
 {¶ 14} Beyond the classification of contempt as direct or indirect, courts may further classify contempt as either civil or criminal. This distinction depends largely upon the character and purpose of the punishment imposed. In the case of civil contempt, the punishment is remedial or coercive, for the benefit of the complainant. Brown v.Executive 200, Inc. (1980), 64 Ohio St.2d 250, 253. The contemnor is said to carry the keys of his prison in his own pocket, as he will be free if he complies with the order of the court. Id., citing In re Nevitt (C.A. 8, 1902), 117 F. 448, 461. In contrast, the punishment in a criminal contempt action generally consists of an unconditional prison sentence.Id. at 254. The imprisonment for criminal contempt serves as punishment for the completed act of disobedience, and vindicates the authority of the court. Id.
 {¶ 15} The record is not clear as to whether the trial court imposed the jail sentence for Tong's failure to abide by the garnishment order, or the subsequent order to produce Ison's payroll information. However, the record reflects that neither of these actions occurred in the presence of the trial court. Therefore, any contempt based upon these actions is indirect. Here, the trial court clearly imposed an unconditional thirty-day jail sentence upon Tong. There is no provision for Tong's release upon either payment of the garnishment order, or production of Ison's payroll records. The trial court imposed this sentence strictly as a punishment for Tong's disobedience of prior orders of the court. Accordingly, we conclude that the thirty-day unconditional jail sentence was punishment for indirect criminal contempt.
 {¶ 16} The classification of contempt as either civil or criminal determines the applicable burden of proof. In a civil contempt action, the burden of proof is clear and convincing evidence, Brown at 253, while in criminal contempt cases courts require proof beyond a reasonable doubt. Brown at syllabus; Scherer v. Scherer (1991), 72 Ohio App.3d 211,214. Here, we find the trial court abused its discretion in sentencing Tong to thirty days of actual incarceration without clearly holding that he was guilty of contempt beyond a reasonable doubt. Brown at 255.
 {¶ 17} As noted by the Ohio Supreme Court, "[t]he most important consequences arising from this classification of contempts [as either civil or criminal] is that many of the significant constitutional safeguards required in criminal trials are also present in criminal contempt proceedings." Brown at 252, quoting State v. Kilbane (1980),61 Ohio St.2d 201. Perhaps the most significant of these rights is the contemnor's right to due process. Winkler v. Winkler (1991),81 Ohio App.3d 199, 202. The right to due process encompasses the right of the accused to be advised of the charges against him, to have a reasonable opportunity to meet the charges by way of explanation or defense, and the opportunity to call other witnesses on his behalf. See,In re Yeauger (1992), 83 Ohio App.3d 493, 497.
 {¶ 18} "Notice to comply with due process requirements must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded and it must `set forth the alleged misconduct with particularity.' * * * Due process of law * * * does not allow a hearing to be held without giving * * * [defendants] timely notice, in advance of the hearing, of the specific issues that they must meet." (Emphasis and footnotes removed.) First Bank of Mariettav. Mascrete, Inc. (1998), 125 Ohio App.3d 257, 268-69, quoting State exrel. Johnson v. Perry Cty. Court (1986), 25 Ohio St.3d 53, 57-58, citingIn re Gault (1967), 387 U.S. 1, 33-34.
 {¶ 19} Here, the record clearly reflects that counsel for the Bank served Tong with the motion for show cause order, which specifically requests that the court order Tong to appear before the court and "show cause why he should not be held in contempt for failure to file an answer to the Affidavit, Order and Notice of Garnishment filed herein." While Tong argues that he was never served with the show cause order, the record reflects that a process server personally served him on December 31, 2002, thirty days before the scheduled hearing. We find the motion and order were sufficient to put Tong on notice, and enable him to prepare for a civil contempt proceeding.
 {¶ 20} However, the motion and order fail to alert Tong to the possibility that he could be subject to criminal punishment, including incarceration, for his actions. Because due process requires notice that criminal penalties may be imposed, we find that the notice the trial court provided to Tong was constitutionally inadequate in the context of a criminal contempt proceeding. See Mosler v. United Auto., Aerospace, Agr. Implement Workers of Am. (1993), 91 Ohio App.3d 840, 845. If the basis of the trial court's contempt finding was Tong's failure to produce the payroll documentation as ordered, the court failed to provide him with written notice of the charge against him and an opportunity for a hearing, where he or his counsel could speak in his defense.
 {¶ 21} In addition to the right to notice of the charges, and an opportunity to address them, constitutional procedural due process requires that one charged with criminal contempt of court have the right to be represented by counsel. Courtney v. Courtney (1984),16 Ohio App.3d 329, 332, citing In re Oliver (1948), 333 U.S. 257, 275. In a criminal contempt proceeding, a contemnor must be informed of his right to counsel and must knowingly and voluntarily waive this right.Garfield Hts. v. Stefaniuk (1998), 127 Ohio App.3d 293, 296-97, citingState v. Eyrich (June 19, 1996), Monroe App. No. 745.
 {¶ 22} Here, the record reflects that Tong appeared, pro se, at both the evidentiary and sentencing hearings. The record contains no indication that the trial court ever advised Tong of his constitutional right to counsel, nor is there any indication that he knowingly and voluntarily waived this right. A valid waiver of the right to counsel will not be presumed from a silent record. Brook Park v. Kirsch (2000),138 Ohio App.3d 741, 746, citing Carnley v. Cochran (1962), 369 U.S. 506,516. Accordingly, we find that the trial court abused its discretion by failing to inform Tong of his constitutional right to counsel, and failing to obtain a knowing and voluntary waiver of this right before commencing the contempt proceedings.
 {¶ 23} Based upon the foregoing, we find that the trial court erred in sentencing Tong to an unconditional thirty days incarceration without affording him the constitutional and statutory procedural due process required in a criminal contempt proceeding. Accordingly, we sustain Tong's assignment of error as it relates to the trial court's imposition of a thirty-day jail sentence.
 III. {¶ 24} In addition to the thirty-day unconditional jail sentence, the trial court ordered Tong to pay $1,479.43, as and for the garnishment, and a $250 fine. These penalties are civil in nature, and, therefore, they are valid if the record supports their imposition by clear and convincing evidence.
 {¶ 25} The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." In re Estate of Haynes (1986), 25 Ohio St.3d 101,103-04. If there is some competent, credible evidence going to all the essential elements of the case, we will not reverse the trial court's judgment. State v. Schiebel (1990), 55 Ohio St.3d 71, 74. We may not substitute our judgment for that of the trial court when there is some competent, credible evidence supporting the trial court's findings and decision. Id.
 {¶ 26} Tong argues that the trial court did not have any evidence to support its finding that Ison was Tong's employee, other than Tong's admission that he made four garnishment payments.[1] However, the record does contain the answer of the employer, filed by Tong on April 10, 2002, wherein Tong stated that Ison was in his employ and certified that this statement was true. Additionally, with each interim report and answer that Tong filed, he made statements regarding Ison's disposable earnings and stated that he withheld the amounts submitted with the form from Ison's personal earnings. On each form, Tong identified himself as Ison's employer and signed the forms, certifying that his statements were true.
 {¶ 27} In addition to the documents Tong filed with the court stating Ison was an employee, we note that at the January 30, 2003 hearing, when counsel for the Bank asked Tong whether Ison was still an employee of Tong's business, Tong Construction, Tong replied, "Technically no. But, I expect him to be back in the Spring." When counsel asked Tong to explain his statement, he indicated that he laid Ison off for the winter. Tong made no effort to claim that when Ison did work for him, he was an independent contractor rather than an employee. Thus, based upon the information Tong provided to the court, there was some competent credible evidence to support the trial court's conclusion that Ison was Tong's employee until December 2002.
 {¶ 28} The record reflects that Tong last filed an interim report and answer on July 19, 2002. The record also reflects that he never filed a final report and answer of the garnishee reflecting that Ison had left his employ, as required by R.C. 2716.08. Thus, the record contains some competent, credible evidence to support the trial court's conclusion that Tong was in contempt of the garnishment order.
 {¶ 29} We have previously found that "[c]ompensation of the injured party has been a traditional function of civil contempt." FirstBank of Marietta at 267-68, citing Cincinnati v. Cincinnati Dist. Council51 (1973), 35 Ohio St.2d 197, 206. Accordingly, we have held that "judicial sanctions in civil contempt proceedings may be employed to compensate the complainant for losses sustained where it can be proven that the damages were a direct result of the contempt." Id. Here, Tong testified that from July to December 2002, he paid Ison approximately $10,000. Thus, Tong could have garnished up to $2,500 from Ison's personal earnings. As this amount exceeded the $1,479.43 outstanding balance of the underlying judgment, the trial court did not abuse its discretion in finding that the bank suffered damages in that amount as a direct result of Tong's contempt.
 {¶ 30} Pursuant to R.C. 2705.05(A)(1), a trial court may impose a fine of not more than $250 for a first contempt offense. Having found that the record contains some competent, credible evidence to support the trial court's conclusion that Tong was in contempt of the garnishment order, we cannot say that the trial court abused its discretion in imposing such a fine for Tong's contempt of that order.
 {¶ 31} Based upon the foregoing, we find that the record contains some competent, credible evidence to support the trial court's conclusion that Tong was Ison's employer, and that Tong was therefore in contempt of court for his failure to obey the trial court's garnishment order. Accordingly, we overrule Tong's assignment of error as it relates to the civil penalties imposed by the trial court including the order to pay the Bank $1,479.43 as and for the garnishment, and the $250 fine.
 {¶ 32} In conclusion, because we find that the trial court abused its discretion in sentencing Tong to an unconditional thirty-day jail sentence without affording him his constitutional right to due process, we sustain Tong's assignment of error as it relates to that sentence. However, because we also find that the record contains some competent, credible evidence to support the trial court's conclusion that Tong was Ison's employer, and therefore in contempt of court for his failure to obey the trial court's garnishment order, we overrule Tong's assignment of error as it relates to the civil penalties ordered by the trial court. Accordingly, we sustain Tong's assignment in part, overrule it in part, and remand this cause to the trial court for further proceedings consistent with this opinion.
JUDGMENT AFFIRMED IN PART REVERSED IN PART, AND REMANDED.
Evans, P.J. and Abele, J.: Concurs in Judgment and Opinion.
[1] Tong argues that, based upon his submission of a 1099 on February 10, 2003, Ison was an independent contractor rather than an employee, and therefore Tong was never required to garnish Ison's earnings. Even if Ison were an independent contractor, we note the earnings held by Tong would have been subject to garnishment pursuant to R.C. 2716.01(B) and R.C. 2116.11, et seq. However, Tong's April 2002 admission that Ison was his employee, and his failure to inform the Bank that Ison was an independent contractor prevented the Bank from initiating the proper proceedings under those statutes.