Hoover, J.
*46 {¶ 1} Defendants-appellants, Kerensa A. Kilzer ("Kerensa") and her husband Paul L. Kilzer ("Lou"), appeal from (1) Kerensa's criminal contempt conviction and (2) Kerensa's and Lou's criminal cover up convictions in the Athens County Common Pleas Court. On appeal, the Kilzers contend, inter alia, that the criminal convictions are contrary to law, and that they were denied their rights to due process of law. Because we conclude that the trial court did not sufficiently or timely inform the Kilzers of the charges and penalties they were facing, specifically the criminal nature of the contempt charges, we order that the contempt judgments of the trial court be reversed and vacated.
I. Facts and Procedural Posture
{¶ 2} This lawsuit arises out of a dispute as to the validity of an oil and gas lease on the Kilzers' property. On May 27, 2000, Kerensa and Lou, as lessors, entered into an oil and gas lease with John C. Metcalf, as lessee, covering their farm and several existing oil and gas wells on their property in Athens County, Ohio. On October 15, 2010, John C. Metcalf assigned his interest in the lease to his ex-wife, Jamie L. Metcalf. In December 2010, the Kilzers locked the property and placed a blind in front of the gates, thereby preventing Jamie Metcalf from entering the property and having access to the wells and storage tanks. For the next several months the parties disagreed over whether the oil and gas lease remained valid under its terms. In June 2011, the Kilzers filed an Affidavit of Forfeiture with the county recorder in which they stated that the lease had terminated because: (1) the Metcalfs had abandoned the premises for several years, and (2) there were no producing oil and gas wells on the property. Jamie Metcalf claimed that she was never served notice of the Kilzers' intent to file the Affidavit of Forfeiture, as statutorily required.
{¶ 3} In July 2011, Jamie Metcalf filed a complaint[2] against Kerensa and Lou. The complaint sought a declaratory judgment and injunctive relief regarding the validity of the oil and gas lease. The complaint also sought damages for fraud, falsification, breach of contract, conversion, and intentional tortious interference with the contract rights of the plaintiff. Among the many allegations in the complaint, Metcalf asserted that Kerensa's signature on the Affidavit of Forfeiture had been forged. The Kilzers filed an answer and counterclaims. In the answer, they denied the allegation that Kerensa's signature had been forged on the Affidavit of Forfeiture.
{¶ 4} Kerensa's and Lou's depositions were taken on August 11, 2011. During Kerensa's deposition, when asked if the Affidavit of Forfeiture bears her signature, she responded, "Yes." Then when asked if she was the one who signed the document, she answered, "Yes, I did sign it." Later during the deposition when asked again if the signature on the Affidavit of Forfeiture was hers, she stated, "I affirm once again that is my signature." When opposing counsel asked, "Doesn't it appear that someone has signed that document *47 * * *?", Kerensa again stated, "No, I affirm this is my signature and this is my signature."
{¶ 5} On September 19, 2013, at a hearing in front of the trial court on a motion to disqualify Attorney Don Wirtshafter as the Kilzers' counsel, Kerensa, Lou, and Wirtshafter[3] testified in regards to the execution of the Affidavit of Forfeiture. Kerensa testified that Lou had actually signed her name on the Affidavit of Forfeiture and she then acknowledged and ratified the signature. Kerensa explained that throughout their marriage, she and Lou had signed documents for each other; and that she had given Lou permission to sign for her. However, Kerensa admitted that she did not read the Affidavit of Forfeiture prior to giving her husband permission to sign it. Lou testified that he signed his and Kerensa's signature on the Affidavit of Forfeiture when he was alone at his kitchen table. Wirtshafter testified that he did not actually witness either Kerensa or Lou physically sign the Affidavit of Forfeiture. Rather, he picked up the Affidavit of Forfeiture from Lou; and Lou acknowledged his signature. Later that evening, Kerensa telephoned Wirtshafter and acknowledged her signature. According to Wirtshafter, "She acknowledged that it was hers and that was good enough for me."
{¶ 6} On October 15, 2013, Metcalf filed a document titled, Plaintiff's Charges in Contempt and Motion to Show Cause Against the Defendants, moving the trial court to order Kerensa and Lou "to appear and show cause why they should not be held in contempt of Court and sanctioned for their failure to comply with discovery and answer truthfully to questions posed to them during their depositions." Through the filing Metcalf requested as sanctions that her legal fees be paid for, and that the Affidavit of Forfeiture be barred from introduction of evidence at trial.
{¶ 7} The trial court issued an Entry and Order to Show Cause on February 25, 2014; and the contempt hearing was held three days later. No witnesses testified at the contempt hearing. The trial court and Metcalf's trial counsel discussed documents and testimony from the case. These documents were admitted as exhibits. Oral arguments were given; and the trial court questioned whether the contempt charges were civil or criminal in nature. During discussions, the trial court indicated for the first time that a cover up had occurred. At the end of the contempt hearing, the trial court found that Kerensa had been untruthful in her August 11, 2011 deposition.
{¶ 8} In the Judgment Entry on Charges of Contempt and Motion to Show Cause (the "contempt judgment entry"), filed April 11, 2014, the trial court found "beyond a reasonable doubt that defendant Kerensa Kilzer is in contempt of court for giving false testimony at her deposition;" but that "Paul Kilzer is not in contempt." In the contempt judgment entry, the trial court also found that Kerensa and Lou had been involved in a cover up, for allegedly covering up irregularities in the Affidavit of Forfeiture. As a sanction for their behavior, the trial court held that the Affidavit of Forfeiture could not be received into evidence except at the request of Metcalf. The issue regarding legal fees was left open by the trial court.
{¶ 9} The fact that the contempt proceedings had been criminal, as opposed to civil in nature, was explicitly divulged by the trial court for the first time when it *48 filed an Entry Scheduling Hearing for Criminal Contempt on July 9, 2015. This hearing was set shortly after the parties had settled the primary case. Following the sentencing hearing, the trial court filed its Sentencing Judgment Entry Following Finding in Contempt of Court ("sentencing judgment entry") on August 14, 2015, in which a fine was imposed on Kerensa.
{¶ 10} Thereafter, the Kilzers filed a timely notice of appeal and also moved this Court for a stay of execution of the trial court's order.
II. Assignments of Error
{¶ 11} The Kilzers assert the following assignments of error for review:
First Assignment of Error:
The trial court erred as a matter of law when it convicted Kerensa of criminal contempt because, contrary to the trial court's findings, her testimony in her deposition was truthful.
Second Assignment of Error:
The trial court erred as a matter of law when it convicted Kerensa of criminal contempt of court.
Third Assignment of Error:
The trial court erred as a matter of law when it convicted Kerensa and Lou of cover up.
Fourth Assignment of Error:
By usurping the role of the jury when the contempt judgment entry was filed, the trial court violated the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution and the due process clause and right to access to court in Article I, Section 16, of the Ohio Constitution.
III. Law and Analysis
{¶ 12} All of the Kilzers' assignments of error suggest, for various reasons, that the trial court erred in convicting Kerensa of criminal contempt and Kerensa and Lou of a cover up. However, because we conclude that the arguments advanced in support of the second and third assignments of error are dispositive, we consider those assignments of error first.
{¶ 13} In support of their second and third assignments of error, the Kilzers argue, inter alia, that the trial court erred by failing to timely inform them of the charges and criminal penalties involved; and that such failure violated their due process rights. For the reasons that follow, we agree.
{¶ 14} A contempt order usually lies in the trial court's sound discretion and such order will not be reversed absent an abuse of that discretion. State v. Lytle , 4th Dist. Ross No. 12CA3330, 2013-Ohio-2683, 2013 WL 3282930, ¶ 10. A trial court abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable manner. Cullen v. State Farm Mut. Auto. Ins. Co. , 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, ¶ 19. "Moreover, under this standard reviewing courts must not substitute their judgment for that of the trial court." Lytle at ¶ 10.
{¶ 15} Contempt is "conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." Windham Bank v. Tomaszczyk , 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph one of the syllabus. Courts generally classify contempt as either direct or indirect. Lytle at ¶ 8. Direct contempt involves "misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice." R.C. 2705.01 ; Lytle at ¶ 8. In *49 contrast, indirect contempt involves acts occurring outside the presence of the court that demonstrate a lack of respect for the court or its lawful orders. R.C. 2705.02 ; Lytle at ¶ 8. Acts in direct contempt of court may be summarily punished. R.C. 2705.01. However, when the contemptuous actions occur outside the presence of the court, the court must afford the accused a hearing, at which he will have an opportunity to be heard, by himself or counsel. R.C. 2705.03.
{¶ 16} Contempt is further classified as either civil or criminal. Oak Hill Banks v. Ison , 4th Dist. Jackson No. 03CA5, 2003-Ohio-5547, 2003 WL 22386806, ¶ 14. "This distinction depends largely upon the character and purpose of the punishment imposed." Id ."Civil contempt sanctions are designed for remedial or coercive purposes and are often employed to compel obedience to a court order[;] [c]riminal contempt sanctions, however, are punitive in nature and are designed to vindicate the authority of the court." State ex rel. Corn v. Russo , 90 Ohio St.3d 551, 555, 740 N.E.2d 265 (2001). "Any sanction imposed for civil contempt must afford a contemnor the right to purge himself of the contempt." Camp-Out, Inc. v. Adkins , 6th Dist. Wood No. WD-06-057, 2007-Ohio-3946, 2007 WL 2217056, ¶ 21. The punishment for criminal contempt, by contrast, "is 'punishment for the completed act of disobedience' and usually consists of fines and/or an unconditional period of incarceration." Id . at ¶ 20, quoting In re Purola , 73 Ohio App.3d 306, 311, 596 N.E.2d 1140 (3d Dist. 1991).
{¶ 17} Here, the trial court determined that Kerensa was in contempt of court for giving false testimony at her deposition, and that Kerensa and Lou had been involved in a "cover up" for allegedly covering up irregularities in the Affidavit of Forfeiture. Because this conduct did not occur in the presence of the trial court, any contempt based upon these actions is indirect. Furthermore, the sanctions imposed, in particular the fine, were aimed at vindicating the authority of the court and to punish the Kilzers' behavior.[4] Accordingly, we conclude that the sanctions imposed were punishment for indirect criminal contempt.
{¶ 18} "The requirements of due process apply to both civil and criminal contempt proceedings." In re Helfrich , 5th Dist. Licking No. 13CA20, 2014-Ohio-1933, 2014 WL 1875509, ¶ 48. "Due process and R.C. 2725.03 require that a person charged with indirect contempt be provided adequate notice, time to prepare any defense, and an opportunity to be heard." Id ."For indirect criminal contempt charges, the accused must have notice that the court may impose criminal penalties." Id ., citing Ison at ¶ 20.
{¶ 19} "Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must set forth the alleged misconduct with particularity. * * * Due process of law * * * does not allow a hearing to be held without giving * * * [defendants] timely notice, in advance of the hearing, of the specific issues that they must meet." (Quotations omitted.) First Bank of Marietta v. Mascrete, Inc. , 125 Ohio App.3d 257, 268-269, 708 N.E.2d 262 (4th Dist. 1998).
{¶ 20} Here, while the trial court generally followed the procedure for an indirect contempt occurring outside the *50 presence of the court, it did not timely or sufficiently notify the Kilzers that they were on trial for criminal contempt or subject to criminal sanctions. Metcalf's Charges in Contempt and Motion to Show Cause requested as sanctions, that her legal fees be paid for, and that the Affidavit of Forfeiture be barred from introduction of evidence at trial. In their memorandum in opposition, the Kilzers argued that Metcalf's "charges of indirect civil contempt should be dismissed", and that Metcalf had "failed to make out a charge of criminal contempt." The trial court's Entry and Order to Show Cause, setting the matter for hearing, ordered that the Kilzers "show cause why they should not be held in contempt for their failure to comply with discovery and answer truthfully to the questions posed to them during their depositions. Failing such proof, the Kilzer Defendants shall be found in contempt and this Court shall impose appropriate sanctions." Given this record, we conclude that the motion and order were sufficient to put the Kilzers on notice of civil contempt proceedings; but, the motion and order failed to alert the Kilzers to the possibility that they could be subject to criminal punishment.
{¶ 21} Because due process requires notice that criminal penalties may be imposed, we find that the notice the trial court provided to the Kilzers was constitutionally inadequate in the context of a criminal contempt proceeding. See Ison , 2003-Ohio-5547, 2003 WL 22386806, at ¶ 20. Advance notice that the Kilzers could be subject to criminal sanctions is simply missing from the record. Even at the contempt hearing Metcalf's counsel suggested that the contempt proceedings were not criminal in nature.
BY THE JUDGE: Okay now Mr. Rittenhouse um what kind, you're saying contempt or are you saying civil contempt, criminal contempt what are you saying that?
BY ATTORNEY RITTENHOUSE: I'm not saying criminal contempt. I'm asking for the sanctions I've requested. * * *
The first hint that the contempt proceedings could be criminal in nature occurred when the trial court released its contempt judgment entry and found "beyond a reasonable doubt" that Kerensa was in contempt of court for giving false testimony at her deposition. Of course, this notice is inadequate because the contempt hearing had already taken place months earlier; thereby preventing the Kilzers the opportunity to properly address the charge. Furthermore, the trial court never gave the Kilzers notice that they were to be charged and punished for participating in a cover up until the contempt hearing was all but over.
{¶ 22} Based upon the foregoing, we find that the trial court failed to timely alert Kerensa and Lou to the possibility that they could be subject to criminal punishment for their actions. Because due process requires notice that criminal penalties may be imposed, the notice provided to the Kilzers was constitutionally inadequate in the context of a criminal contempt proceeding. Moreover, even if we were to conclude that this cause involved an indirect civil contempt, the trial court did not provide the Kilzers the opportunity to purge themselves of contempt. Thus, under either applicable form of contempt, the trial court abused its discretion in finding Kerensa in contempt, and Kerensa and Lou guilty of a cover up. Accordingly, the Kilzers' second and third assignments of error are sustained.
{¶ 23} Because we have sustained the Kilzers' second and third assignments of error, the judgment shall be reversed. Consequently, the remaining assignments *51 of error are moot; and we decline to address them. See App.R. 12(A)(1)(c).
IV. Conclusion
{¶ 24} Based upon the foregoing, the contempt judgment entry and the sentencing judgment entry of the trial court is reversed and vacated.
JUDGMENT REVERSED AND VACATED.
Abele, J.: Concurs in Judgment and Opinion.
McFarland, J.: Concurs in Judgment Only.

The initial complaint was filed on July 15, 2011, but the Kilzers were never served the initial complaint. Thereafter, a verified amended complaint was filed on July 26, 2011, which corrected the Kilzers' address. A second amended verified complaint was filed August 23, 2011, this time to recite one additional fact. A third amended complaint was filed with leave of court on January 5, 2012, which included an additional claim for money damages. A fourth amended complaint was filed with leave of court on November 26, 2013, which added Attorney Don Wirtshafter as a defendant, and supplemented the claims existing against the Kilzers. Wirtshafter is not a party to this appeal.

Attorney Wirtshafter prepared the Affidavit of Forfeiture, and also notarized the signatures on the document.

We note that the trial court imposed the fine after the parties had settled the primary case, further evidencing the punitive nature of the sanction.