DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Wood County Court of Common Pleas. The undisputed facts underlying appellants' assignments of error are as follows.
 {¶ 2} Plaintiff-appellee, Camp-Out, Inc., ("Camp-Out"), which sells campers, camping accessories, and truck accessories, is a New Jersey corporation licensed to conduct business in the state of Ohio. From January 1998 to May 2001, Camp-Out operated a store in Toledo, Ohio. During that period, Chris Scott, the manager of the Toledo store, became friends with defendant-appellant, Greg Adkins. When the store *Page 2 
closed, Greg and his father, defendant-appellant, Ken Adkins, allowed appellee to store its property, such as shelving and trailers, in appellants' "40 X 40 pole barn." Appellants' property is located in Wood County Ohio. Appellee's property remained in appellants' barn for over four years.
 {¶ 3} On August 31, 2005, Camp-Out filed a complaint in which it asserted that Ken and Greg Adkins converted property belonging to appellee and/or breached a bailment contract. Appellants answered and contended that they only permitted the storage of appellee's property in their barn for a period of six months. In their counterclaim, they asked for storage fees for the period exceeding six months and set forth claims sounding in abandonment and trespass, breach of contract, and unjust enrichment.
 {¶ 4} On June 13, 2006, the trial court entered a judgment encompassing a settlement agreement between the parties. Pursuant to that agreement, (1) appellants were to receive title to an "implement trailer" on or before July 10, 2006; (2) title to three other trailers would be transferred to appellants if they complied with the terms of the settlement agreement; (3) appellee had two days, July 10 and 11, 2006, to remove a list of its property from appellants' property, but was allowed an extra 48 hours in the event of an act of God or inclement weather; (4) no trailers could leave appellants' property until appellee's property was removed from appellants' barn; (5) Chris Scott agreed that he would not be allowed on appellants' property during the removal of appellee's property; and (5) Greg Adkins agreed to stay away from the barn while Camp-Out's agents *Page 3 
removed its property from the barn. He also agreed to being allowed on the property only in the company of a "police officer" and agreed to allow his father to supervise the removal of said property.
 {¶ 5} On July 13, 2006, appellee filed an emergency motion to enforce the terms of the settlement agreement, to hold Greg and Ken Adkins in contempt of court, and for attorneys fees. Camp-Out alleged that appellants failed to comply with the terms of the settlement agreement by, inter alia, the presence of Greg Adkins unaccompanied by a police officer at the site. Appellee further asserted that, despite the fact that Camp-Out was delayed from removing appellee's property on July 11, 2006 due to inclement weather, appellants failed to provide access to the property on July 12, 2006. The motion was not supported by any evidentiary materials, e.g., an affidavit[1] .
 {¶ 6} The trial court, without holding a hearing, immediately granted appellee's motion, found appellants in contempt of court and, as a result, ordered them to allow appellee's representatives unfettered "access to the pole barn for a twelve hour period on July 13, 2006 from 12: p.m. to 12: a.m. for the purpose of completing the removal of its *Page 4 
property from Defendants' [appellants'] pole barn." The court further ordered appellants to return all of the trailers to appellee and to pay "increased costs, expenses and attorney fees incurred by Camp Out [sic] as a result of Defendants' violation of this court's order, upon Camp Out's [sic] submission of documentation substantiating the same, which shall be submitted within 10 days of this order." Appellants filed their memorandum in opposition to appellee's motion shortly after the trial court granted that motion.
 {¶ 7} On July 26, 2006, appellee filed a motion to release the certificates of title to the three trailers and submitted documents, supported by the affidavits of Chris Scott and of Camp-Out's trial counsel, evidencing costs, expenses and attorneys fees incurred as the result of the delay in the removal of Camp-Out's property.
 {¶ 8} On July 31, 2006, the common pleas court entered its final judgment awarding appellee its requested $7,080.03 in extra costs, expenses, and attorneys fees. The court also released the certificates of title of the trailers to Camp-Out. On August 11, 2006, appellants filed the instant appeal of the trial court's judgment. They assert that the following errors occurred in the proceedings below:
 {¶ 9} "First Assignment of Error
 {¶ 10} "The trial erred in granting plaintiff-appellee's motion for emergency relief to enforce order to reflect settlement, to hold defendants in contempt and for attorney fees and costs in that by finding defendants-appellants in contempt without notice and hearing (in fact without any opportunity to respond) is in contravention of R.C.2705.03, as well *Page 5 
as violating defendants-appellants' right to due process as protected by the United States Constitution and Constitution of the state of Ohio.
 {¶ 11} "Second Assignment of Error
 {¶ 12} "The trial court erred in granting plaintiff-appellee's motion for emergency relief to enforce order to reflect settlement, to hold defendants in contempt of court and for attorney fees and costs up to[sic] in that the trial court in granting plaintiff/appellee's motion effectively found defendants-appellants as having breached the settlement agreement (contract) again without providing any opportunity for defendants to be heard in contravention of defendant's due process rights, as well as having ruled without any evidence presented to the court, all of which is contrary to law.
 {¶ 13} "Third Assignment of Error
 {¶ 14} "The trial court erred in granting plaintiff-appellee's motion for emergency relief to enforce order to reflect settlement, to hold defendants in contempt of court and for attorney fees and costs up to[sic] in that the trial court in granting plaintiff/appellee's motion as to emergency (injunctive) relief was contrary to law.
 {¶ 15} "Fourth Assignment of Error
 {¶ 16} "The court's award of attorney fees and costs without affording defendants-appellants the opportunity to be heard again violated defendants-appellants' due process rights and furthermore was based upon insufficient evidence, all of which is contrary to law." *Page 6 
 {¶ 17} In their first assignment of error, appellants assert that the contempt in this cause was an indirect contempt; therefore, the trial court violated R.C. 2705.03 and their due process rights by failing to provide them with notice and an opportunity to be heard. On the other hand, appellee maintains that appellants committed a direct contempt; therefore, the court below could summarily punish appellants without providing them with notice or an opportunity to be heard.
 {¶ 18} Contempt of court is defined, among other things, as the failure to abide by a lawful judgment or order of a court, or behavior that brings the administration of justice into disrespect, or that embarrasses or obstructs a court in performing its functions. R.C.2705.01(A); In re Contempt of Morris (1996), 110 Ohio App.3d 475, 479
(citation omitted). R.C. 2705.01 defines an act of direct contempt as misbehavior occurring in the presence of a judge or "so near the court or judge as to obstruct the administration of justice." In an instance of direct contempt, the court may summarily punish the contemnor. Id.
 {¶ 19} An indirect contempt of court happens when a party's conduct occurs outside the presence of the court and demonstrates a lack of respect for the court or its orders. Bierce v. Howell, 5th Dist. No. 06-CAF-05-0032, 2007-Ohio-3050, ¶ 16. When the objectionable act occurs outside the presence of the court, that is, constitutes indirect contempt, the court must give the alleged contemnor notice and an opportunity to be heard, either by himself or by his counsel. R.C.2705.03. See, also, Oak Hill Banks v. Ison, 4th Dist. No. 03CA5,2003-Ohio-5547, ¶ 13. *Page 7 
 {¶ 20} Depending upon the purpose of the sanction imposed, contempt is further classified as criminal or civil contempt. State ex rel. Corn v.Russo, 90 Ohio St.3d 551, 555, 2001-Ohio-15. Criminal contempt is purely punitive in nature and aimed at vindicating the authority of the court. Id. (Citation omitted.) Any sanction imposed for a criminal contempt is not coercive in its nature. Brown v. Executive 200, Inc. (1980),64 Ohio St.2d 250, 254. Instead, it is "punishment for the completed act of disobedience" and usually consists of fines and/or an unconditional period of incarceration. In re Purola (1991), 73 Ohio App.3d 306, 311.
 {¶ 21} A sanction imposed for civil contempt is remedial or coercive in nature and is imposed for the benefit of the complainant. Brown v.Executive 2000, Inc., 64 Ohio St.2d at 253. Bierce v. Howell,2007-Ohio-3050, ¶ 18. In such a case, notice which apprises the alleged contemnor of the nature of the charge against him so that he may prepare a defense is sufficient for due process purposes. Cincinnati v.Cincinnati District Council 51, American Federation of State, County Municipal Employees (1973), 35 Ohio St.2d 197, 203. Any sanction imposed for civil contempt must afford a contemnor the right to purge himself of the contempt. Id. (Citation omitted.)
 {¶ 22} Finally, a court has the authority to punish disobedience of its judgments or orders pursuant to its inherent power. Zakany v.Zakany (1984), 9 Ohio St.3d 192, syllabus. A contempt order will not be reversed unless the trial court abused its discretion. State ex rel.Ventrone v. Birkel (1981), 65 Ohio St.2d 10, 11. An abuse of discretion connotes that the trial court's attitude in reaching its decision was *Page 8 
unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 23} In the case under consideration, we conclude that the purpose of the punishment imposed by the trial judge, as noted by the judge himself, is premised on appellants' alleged disobedience in failing to abide by a prior order of the court. Consequently, appellants were determined to be in criminal contempt of court. Specifically, the ordered penalties were more in the nature of fines imposed as a result of appellants' failure to comply with the trial court's judgment and were, therefore, actually aimed at vindicating the authority of that court. As a result, appellants were entitled to all of the due process rights afforded a criminal defendant. The record reveals that they were not afforded those rights.
 {¶ 24} Moreover, even if we were to hold that this cause involved an indirect civil contempt, appellants, who apparently received only informal notice of appellee's motion, were never provided with the opportunity to be heard on that motion due to the ex parte order filed and journalized by the trial court at the same time, 11:00 a.m, on July 13, 2006, that appellee filed its contempt motion. Moreover, and assuming that this cause involved an indirect civil contempt, the court below never allowed appellants any time to purge themselves of contempt. Accordingly, under either applicable form of contempt, the Wood County Court of Common Pleas abused its discretion in finding appellants in contempt, and appellants' first assignment of error is found well-taken. *Page 9 
 {¶ 25} In their second assignment of error, appellants urge that the trial court's order finding them in contempt was tantamount to a grant of a summary judgment finding that they were in breach of the settlement agreement. They then claim that this action denied them their due process rights by settling a factual dispute in favor of appellee, thereby precluding their right to present their own evidence as to who breached the settlement agreement first. Appellants never raised this issue in their July 13, 2006 memorandum in opposition to appellee's motion to enforce the settlement agreement and for a finding of contempt. As a consequence, appellants waived their right to raise this question for the first time on appeal. See Schade. v. Carnegie BodyCo. (1982), 70 Ohio St.2d 207, 210; Sekora v. General Motors Corp.
(1989), 61 Ohio App.3d 105, 112-113. Appellants' second assignment of error is found not well-taken.
 {¶ 26} In their third assignment of error, appellants maintain that appellee's request for the "emergency" enforcement of the settlement agreement was actually a request for injunctive relief. Appellants therefore claim that Camp-Out was required to offer clear and convincing evidence of the fact that it had no other adequate remedy at law and of the fact that it would suffer irreparable harm if injunctive relief was not granted. Again, appellants never raised this legal theory in the court below; thus we need not address it on appeal. State v.Geraldo (1983), 13 Ohio App.3d 27, 28. Appellants' third assignment of error is found not well-taken.
 {¶ 27} In their fourth assignment of error, appellants assert that the trial court erred in determining a reasonable amount of attorneys fees arising from appellants' refusal to *Page 10 
allow appellee to complete the removal of its property on July 12, 2006. In particular, appellants insist that the court below was required to consider the factors set forth former Code of Prof. Resp. DR 2-106[2]
.
 {¶ 28} Ohio follows the "American Rule," under which a prevailing party may not generally recover attorney fees. Krasny-Kaplan Corp. v.Flo-Tork, Inc. (1993), 66 Ohio St.3d 75, 77. Attorneys fees may be awarded, however, if: (1) a statute creates a duty; (2) an enforceable contract provision provides for an award of attorney fees; or (3) there is a finding that the losing party acted in bad faith. NottingdaleHomeowners' Assn., Inc. v. Darby (1987), 33 Ohio St.3d 32, 33-34.
 {¶ 29} In the present case, the trial court did not make an explicit finding of "bad faith." Furthermore, the trial court simply accepted the amount, $2,035, of attorneys fees calculated by appellee's trial counsel. In doing so, the court failed to ascertain the reasonableness of the amount of those attorneys fees by addressing the factors in former DR 2-106, and, if necessary, modifying the initial calculated amount. See Bittner v. Tri-County Toyota (1991), 58 Ohio St.3d 143, 145. See, also, Zerbe v. Zerve, 1st Dist. Nos. C-040035, C-040036,2005-Ohio-1180, ¶ 6 (A court must consider the factors in DR 2-106 in considering the reasonableness of an award of attorney fees). Therefore, the trial court erred as a matter of law in simply awarding Camp-Out the attorneys fees calculated *Page 11 
by appellee's trial counsel. Farley v. Farley (1994),97 Ohio App.3d 351, 356. Based upon the foregoing, appellants' fourth assignment of error is found well-taken.
 {¶ 30} On consideration whereof, the judgment of the Wood County Court of Common Pleas is affirmed, in part, and reversed, in part. This cause is remanded to that court for further proceedings consistent with this judgment. Specifically, the trial court is ordered to remove the order of contempt from its July 13, 2006 judgment and to eliminate the assessment of attorneys fees against appellants from its July 31, 2006 judgment. Appellants and appellee are each ordered to pay one-half of the cost of this appeal. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., William J. Skow, J. CONCUR.
[1] Appellee refers to the affidavit of Chris Scott in arguing that, on July 12, 2006, appellants were notified, by its attorney of, among other things, the filing of the motion for contempt. Scott's affidavit, however, was filed on July 26, 2006, in support of appellee's motion to release the certificates of title to the trailers and in support of the extra fees and costs engendered by appellants' refusal to allow appellee to remove its property on July 12, 2006. Thus, appellant cannot use this affidavit to support notification of the July 13, 2006 motion to find appellants in contempt. Moreover, despite the fact that appellee refers to documents/telephone conversations that were filed in this court after our grant of appellee's motion to supplement the record, the only supplemental document filed is the July 13, 2006 warrant for the arrest of Greg and Ken Adkins for contempt of court.
[2] Code of Prof. Resp. DR 2-106 was superseded by ProfConR. 1.5, effective February 1, 2007. *Page 1