[Cite as *Phiel v. Ohio Bur. of Workers' Comp.*, 2009-Ohio-7175.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

PERRY PHIEL

    Plaintiff

    v.

OHIO BUREAU OF WORKERS' COMPENSATION

    Defendant

    Case No. 2008-05541-AD

Deputy Clerk Daniel R. Borchert

MEMORANDUM DECISION

{¶ 1} On June 29, 2006, plaintiff, Perry Phiel, a Fraud Investigator employed by defendant, Bureau of Workers' Compensation (BWC), at the BWC Youngstown Service Office, was interviewed by BWC Internal Affairs Investigators, identified as John Kenney and Ryan Beaty. Plaintiff related he was advised the interview was in regard to a complaint made against another Fraud Investigator at the Youngstown Service Office who had allegedly falsified time sheets and had been paid for hours not worked. Plaintiff further related that after a brief discussion with Kenney and Beaty about his fellow employee, "I was advised that I was also being investigated for padding my time even though no complaints were made against me." Plaintiff stated, "I was shown an excel spreadsheet at the meeting and asked to review and explain the discrepancies between the start time entered on my time sheet and the time the building card key access showed I accessed the building (BWC Youngstown Service Office)." Plaintiff pointed out he could not explain the time discrepancies "without an investigation of my own" and he was not allowed to obtain a copy of the excel spreadsheet to apparently check it against his time keeping records. After the interview concluded, plaintiff

contacted his supervisor, Jennifer Saunders, and inquired if she had any knowledge of an investigation being conducted by BWC Internal Affairs into his time keeping. According to plaintiff, Saunders responded "she had no knowledge of any investigation into my time keeping."

{¶ 2} Plaintiff recalled he was subsequently contacted on July 20, 2006 by his department manager, Scott Fitzgerald, who informed him the BWC Internal Affairs department had contacted the Mahoning County Prosecutor's Office in regard to prosecuting him for falsifying time sheets. Plaintiff stated "I was advised (by Scott Fitzgerald) that a case against me will be referred to the Mahoning County Prosector for criminal prosecution for theft in office." In response to receiving this information, plaintiff recalled "I immediately asked Scott Fitzgerald and my immediate supervisor, Jennifer Saunders, for documentation supporting those charges" and was told they did not have access to any investigative material produced by BWC Internal Affairs personnel. Plaintiff explained he then (July 24, 2006) made a public records request to the BWC legal department for "the report of investigation and the supporting evidence that was submitted to the prosecutor's office" by BWC Internal Affairs staff. Apparently, defendant failed to produce any investigatory documentation since plaintiff asserted he did not receive a response to his request.

{¶ 3} Plaintiff related he was prompted by defendant's refusal to comply with his record request to engage a criminal attorney to represent him in any ensuing criminal prosecution. Plaintiff pointed out he paid a retainer of $2,500.00 (copy of check dated July 24, 2006 submitted) for legal representation due to the fact he was not given any documentation produced by the BWC Internal Affairs department in regard to the allegations of time record falsification. Plaintiff stated "I felt I would be arrested and would need an attorney on retainer." Plaintiff reported his attorney was able to obtain on August 15, 2006 a copy of the BWC Internal Affairs report (copy submitted) referencing the investigation concerning time padding allegations. After receiving the report that bore multiple redactions, plaintiff decided to retain the services of the attorney he had hired. According to a billing statement (copy submitted), plaintiff's attorney performed 14.75 hours of work for plaintiff from July 30, 2006 to August 24, 2006. The bulk of the legal work documented on the billing statement consisted of reviewing documents along with several hours of research.

{¶ 4} The BWC Internal Affairs "Report of Investigation" was submitted to plaintiff's attorney with a cover letter from BWC Assistant Director, Legal Operations, Gregory K. Johnson. In his cover letter Johnson explained the report compiled by John Kenney contained redactions "to exclude information subject to the confidential law enforcement investigatory records exception under the Public Records Law." See R.C. 149.43(A)(1)(h) and 149.43(A)(2).[1] In regard to the issue of the BWC Internal Affairs department investigating plaintiff, the following information from the report from plaintiff's June 29, 2006 interview is reproduced in its entirety minus redacted information:

{¶ 5} "At this point of the meeting it was explained to Phiel that IA reviewed additional records within the effected department including the complainant regarding falsification issues and this review revealed some discrepancies that need his clarification.

{¶ 6} "Explain the policy for working through lunches and if any noted justification is required on payroll sheet or calendar:

{¶ 7} "*Phiel stated 'I don't pay close attention to time when I am working through lunches." He said that when in the office, sometimes he would eat lunch while working on the computer and assumed this was a commonly acceptable practice. He said that Saunders recently sent an email to the team not to work through lunches when in the office unless it is justified and to properly document the reason.*

---

[1] R.C. 149.43(A)(1)(h) provides:

"(A) As used in this section:

"(1) 'Public record' means records kept by any public office, including, but not limited to, state, county, city, village, township, and school district units, and records pertaining to the delivery of educational services by an alternative school in this state kept by the nonprofit or for-profit entity operating the alternative school pursuant to section 3313.533 of the Revised Code. 'Public record' does not mean any of the following:

"(h) Confidential law enforcement investigatory records."

R.C. 149.43(A)(2) states:

"(2) 'Confidential law enforcement investigatory record' means any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:

"(a) The identity of a suspect who has not been charged with the offense to which the record pertains, or of an information source or witness to whom confidentiality has been reasonably promised;

"(b) Information provided by an information source or witness to whom confidentiality has been reasonably promised, which information would reasonably tend to disclose the source's or witness's identity;

"(c) Specific confidential investigatory techniques or procedures or specific investigatory work product;

"(d) Information that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source."

**{¶ 8}** "Review of 2005 payroll and calendar revealed that there were no comments indicating reason for working thru lunches averaging 4 to 5 times per month until July. Explain:

**{¶ 9}** "*Phiel stated that he was not aware that documentation was needed but in July 05, Saunders informed the team to document justification on payroll and calendar.*

**{¶ 10}** "Research using computer log on data, building access, payroll sheets and calendar entries revealed 73 separate dates in 2005 in which the building access times were inaccurate/false when compared to payroll sheets during apparent office days. (Spreadsheet was provided to Phiel for reference)........Explain why a total of 34 hours for the period appears to be falsified:

**{¶ 11}** (redacted comments)

**{¶ 12}** "*He stated, 'It could be a number of reasons' and mentioned that he may carry equipment or complete paperwork in the parking lot. He also mentioned that he may speak with a CSS about a case once inside the building.*

**{¶ 13}** "*He explained that he enters his payroll times by memory once a week and the times may not be accurate.*

**{¶ 14}** "Research revealed several dates in 2005 that may be potential time discrepancies as no field work was noted on calendar or payroll sheets. Explain:

**{¶ 15}** "*Phiel stated that previously he did not enter specific detailed information on calendar or payroll but after Saunders requested more details, he began inserting more specifics regarding appointments and field work.*

**{¶ 16}** " Review of 2006 records revealed 15 separate dates with discrepancies on apparent office days. Explain:

**{¶ 17}** "*Phiel again related to resorting to weekly recall for payroll times which may not be accurate and that he now realizes the importance of accurate calendar/payroll entries.*

**{¶ 18}** "Review of 2006 records revealed 42 separate dates with discrepancies as no field work was noted on the calendar or payroll sheets. Explain:

**{¶ 19}** "*Phiel did not provide an answer other than inaccurate memory recall.*

**{¶ 20}** "No office dates were identified for 2006 in which building access times matched payroll sheets. Explain:

**{¶ 21}** "*Phiel stated that several times in 2005, he picked up Tina Hemminger*

*(Fraud Analyst) at her residence and he recorded his start time upon arrival at her residence.....sometimes he would go to office and sometimes they would travel together for field work.*

**{¶ 22}** *"He said that he did not recall picking her up anytime during 2006.*

**{¶ 23}** "Do you have any other concerns/issues to discuss that have not been mentioned during this meeting?

**{¶ 24}** "*Phiel revealed that in retrospect, he should not have depended on his recall to insert his arrival/departure times and should be entering his times daily. He also revealed that he understands the importance of how calendar entries related to accurate payroll time entries.*"

**{¶ 25}** Plaintiff recalled that on August 31, 2006 he was informed by his department supervisor, Scott Fitzgerald, "that Internal Affairs met with the Mahoning County Prosecutor's Office and as a result of that meeting, the Mahoning County Prosecutor's Office was not going to file charges" against him. Plaintiff was given this information a week after his attorney had performed any legal work in regard to the time discrepancy matter investigated by the BWC Internal Affairs department and referred to the Mahoning County Prosecutor. According to plaintiff, the time discrepancy matter remained at issue with his supervisors and on October 17, 2006 he was asked to explain the time discrepancies reported to his departmental supervisors incident to the investigation conducted by Internal Affairs. Plaintiff stated he responded to defendant's request by reviewing the Internal Affairs report of investigation and discovering "numerous discrepancies in the computerized card key access logs and that the time of those logs were not accurate and were not synchronized." After plaintiff provided his explanation, defendant conducted its own investigation concerning the accuracy of the key card system in the two buildings that comprise the BWC Youngstown Service Office. This investigation revealed the building management company had never tested the time panels in the buildings for time accuracy until after November 2006. Upon testing, it was reported that at least one of the panels was several minutes off, none of the panels bore a time display, and none of the panels automatically updated the time at the changeover to daylight savings time. As a result of these findings, time cards for BWC employees, such as plaintiff, were considered "inconclusive" in regard to allegations of "time padding."

{¶ 26} Plaintiff contended "[t]he BWC Internal Affairs department carelessly conducted an investigation into my time reporting [w]ithout taking steps to insure their investigation into my time keeping was accurate." Plaintiff further contended that the BWC Internal Affairs department acted "recklessly" in referring the alleged falsified time sheets issue to the Mahoning County Prosecutor's Office for potential prosecution. Plaintiff asserted defendant's acts in referring investigative material to the Mahoning County Prosecutor and "their refusal to allow me to cooperate in the investigation forced me to hire an attorney" to represent him in a possible defense of criminal charges. Plaintiff essentially argued that but for the acts of defendant he would not have been prompted to seek legal representation. Consequently, plaintiff filed this complaint seeking to recover damages in the amount of $2,500.00 for attorney fees he incurred as a result of defendant's investigative findings and subsequent acts.

{¶ 27} Defendant acknowledged plaintiff was the subject of a BWC Internal Affairs investigation of "time padding" allegations. Defendant related "Internal Affairs suspected (plaintiff) of padding his time in 2005 and 2006, for a total of 35 'padded' hours and $735.00 in compensation." Defendant further related "[t]he investigation into this allegation involved checking records of the keycard entry system in the two buildings that comprise the Youngstown Service Office." Defendant admitted the data gathered from the keycard system was subsequently suggested to be unreliable and it was learned the system had not been tested during the time frame covering the purported discrepancies in plaintiff's work time record. Defendant stated "[a]s a result of these findings, investigators could not exclude the possibility that the time entry records may have been significantly inaccurate due to the synchronizing and testing of the system." Defendant explained "data collected from the time card entry records was determined to be inconclusive on the allegation of false time entries." This determination was apparently made several months after BWC Internal Affairs department, in reliance on information supplied from the time card entry records, referred investigatory material regarding plaintiff's time record to the Mahoning County Prosecutor's Office for potential prosecution. Defendant recalled "in August 2006, a meeting was held between BWC Internal Affairs and the Mahoning County Prosecutor's Office, in which it was determined that criminal charges would not be filed against [plaintiff] regarding the allegations" of falsifying time records.

{¶ 28} Defendant argued that under the circumstances presented plaintiff is not entitled to recover attorney fees. See *Camp-Out v. Adkins*, No. WD-06-057, 2007 WL 2217056 at 5, 2007-Ohio-3946. Defendant pointed out in Ohio attorney fees may generally be awarded if: "(1) a statute creates a duty; (2) an enforceable contract provision provides for attorney fees; or (3) there is a finding that the losing party acted in bad faith." *Camp-Out* citing *Nottingdale Homeowners Assn. Inc. v. Darby* (1987), 33 Ohio St. 3d 32, 33-34, 514 N.E. 2d 702. Furthermore, defendant indicated the prevailing party may be entitled to recover attorney fees in situations where wanton conduct is established in tort cases involving malice where punitive damages are warranted. *Galmish v. Cicchini*, 90 Ohio St. 3d 22, 2000-Ohio-7. Defendant asserted plaintiff has not produced any authority or statutory provision requiring BWC to reimburse him for attorney fees incurred "as a result of the investigation into his workplace conduct." Additionally, defendant asserted there is no provision in the collective bargaining agreement between BWC and plaintiff's collective bargaining unit that would obligate BWC to pay attorney fees under the facts of the instant claim. Also, defendant contended plaintiff has failed to produce evidence to establish the BWC Internal Affairs investigators acted in bad fath in conducting an investigation concerning plaintiff's work time.

{¶ 29} Plaintiff filed a response insisting his attorney fees are recoverable under the circumstances of the claim presented. Plaintiff contended "[t]he BWC acted recklessly and irresponsibly in attempting to file criminal charges against me, with the Mahoning County Prosecutor, by using information that was inaccurate and false." Plaintiff explained he hired an attorney to defend him in any criminal prosecution that may have ensued from investigative material supplied from BWC Internal Affairs department to the Mahoning County Prosecutor's Office. Plaintiff stated, "I hired an attorney to defend me against criminal allegations made against me regarding time padding that were based on false and inaccurate information and recklessly submitted to the Mahoning County Prosecutor requesting prosecution." Plaintiff pointed out that if not for the acts of the BWC Internal Affairs department in conducting its investigation he would not have hired an attorney "to defend me against criminal allegations." Plaintiff has essentially stated a claim grounded in malicious prosecution.

{¶ 30} To establish the tort of malicious prosecution, a plaintiff must prove three

essential elements: (1) malice in instituting or continuing the prosecution; (2) lack of probable cause, and (3) determination of the prosecution in favor of the accused. *Froehlich v. Ohio Dept. of Mental Health*, 114 Ohio St. 3d 286, 2007-Ohio-4161; *Kriegar v. Cleveland Indians Baseball Co.*, 176 Ohio App. 3d 410, 2008-Ohio-2183. Damages in a malicious prosecution action include not only special damages plaintiff proves, but also any injuries including, but not limited to, mental suffering, humiliation, indignity, and loss of time and expenses in defending the action. See *Reenan v. Klein* (1981), 3 Ohio App. 3d 142, 3 OBR 160, 444 N.E. 2d 63, paragraph three of the syllabus. A plaintiff who prevails in a malicious prosecution action may recover as damages those attorney fees expended to vindicate his rights. However absent express statutory authority, a plaintiff is not entitled to recover such attorney fees where punitive damages are not awarded. See e.g. *Davis v. Tunison* (1959), 168 Ohio St. 471, 7 O.O. 2d 296, 155 N.E. 2d 904; *Taylor v. McKelvey* (January 29, 1982), Warren App. No. 72. In *Drain v. Koysdar* (1978), 54 Ohio St. 2d 49, 8 O.O. 3d 65, 374 N.E. 2d 1253, the Ohio Supreme Court determined that R.C. 2743, which codifies the states waiver of sovereign immunity, does not permit the recovery of punitive damages against the state, unless those damages are specifically authorized by statute. *Drain* at 55-56. In the present claim, plaintiff provided no statutory authority for an award of punitive damages under the action pursued.

{¶ 31} R.C. 2743.16(A) the statute of limitations for filing actions in this court provides:

{¶ 32} "(A) Subject to division (B) of this section, civil actions against the state permitted by sections 2743.01 to 2743.20 of the Revised Code shall be commenced no later than two years after the date of accrual of the cause of action or *within any shorter period that is applicable to similar suits between private parties*." (Emphasis added.)

{¶ 33} R.C. 2305.11(A), the statute of limitations for bringing actions such as malicious prosecution states in relevant part:

{¶ 34} "(A) An action for libel, slander, malicious prosecution, or false imprisonment, an action for malpractice other than an action upon a medical, dental, optometric, or chiropractic claim, or an action upon a statute for a penalty or forfeiture shall be commenced within one year after the cause of action accrued."

{¶ 35} The facts of the instant claim show plaintiff's cause of action based on

malicious prosecution accrued in July 2006 when investigatory material was referred to the Mahoning County Prosecutor's Office. Plaintiff filed this action on April 29, 2008, more than one year after his cause of action accrued and outside the time limitations for filing a malicious prosecution claim. Consequently, plaintiff's claim is time barred.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

PERRY PHIEL

Plaintiff

v.

OHIO BUREAU OF WORKERS' COMPENSATION

Defendant

Case No. 2008-05541-AD

Deputy Clerk Daniel R. Borchert

ENTRY OF ADMINISTRATIVE DETERMINATION

Having considered all the evidence in the claim file and, for the reasons set forth in the memorandum decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiff.

_____
DANIEL R. BORCHERT
Deputy Clerk

Entry cc:

Perry Phiel                              Monique A. Hall, Legal Counsel
330 Christian Avenue                     Ohio Bureau of Workers' Compensation
Hubbard, Ohio  44425                     30 W. Spring Street
                                         Columbus, Ohio  43215

RDK/laa
11/16
Filed 12/2/09
Sent to S.C. reporter 3/18/10