[Cite as *Cleveland v. Bryce Peters Fin. Corp.*, 2013-Ohio-3613.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
Nos. 98006, 98007, 98008, 98009, 98010, 98011, 98012, 98013, 98014, 98015, 98016, 98017, 98018, 98019, 98020, 98021, 98022, 98023, 98024, 98078, ~~98079, 98163, and 98164~~

### CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

### BRYCE PETERS FINANCIAL CORP.

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cleveland Municipal Court
Case Nos. 2009 CRB 042296, 2009 CRB 034825, 2009 CRB 034198,
2009 CRB 041737, 2010 CRB 033117, 2009 CRB 034199, 2009 CRB 034200,
2009 CRB022077, 2009 CRB 015353, 2010 CRB 005488, 2009 CRB 007511, 2008 CRB
028553, 2009 CRB 013716, 2009 CRB 028376, 2009 CRB 007512, 2009 CRB 017481, 2009
CRB 015354, 2009 CRB 034826, 2009 CRB 030883, 2009 CRB 017482, 2009 CRB 031358,
2008 CRB 040378, and
2008 CRB 030445

**BEFORE:** Blackmon, J., Boyle, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** August 22, 2013

**ATTORNEYS FOR APPELLANT**

Larry W. Zukerman
Paul B. Daiker
S. Michael Lear
Brian A. Murray
Zuckerman, Daiker & Lear
3912 Prospect Avenue, East
Cleveland, Ohio 44115

**ATTORNEYS FOR APPELLEE**

Barbara Langhenry
Director of Law

By: William H. Armstrong, Jr.
Katherine Zvomuya
Barbara A. Tamas
Assistant Directors of Law
City of Cleveland
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114

PATRICIA ANN BLACKMON, J.:

{¶1}   In this consolidated appeal, appellant, Bryce Peters Financial Corp. ("Bryce Peters"), appeals the trial court's contempt finding and related financial sanctions. Bryce Peters assigns eight errors for our review.[1]

{¶2}   Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.

{¶3}   Between July 2008 and December 2010, the city of Cleveland ("the City") issued multiple housing code violation notices regarding properties owned by Bryce Peters. The City's building and housing inspectors sent the notices to Bryce Peters indicating that the code violations were of a nature that would require demolition or immediate repair. The notices gave Bryce Peters 30 days from the issuance of the citations to correct the violations.

{¶4}   After 30 days had elapsed, the City's inspectors reinspected the properties and found that the violations had not been corrected. Thereafter, the City issued citations for Bryce Peters' failure to comply with the order of the Director of Building and Housing. These citations resulted in 23 separate cases filed against Bryce Peters.

{¶5}   The trial court scheduled arraignments in the respective cases and served the summonses by certified mail to Bryce Peters' address in Reno, Nevada, that were either signed for or refused by Bryce Peters.    Bryce Peters failed to appear at any of the arraignments. After successive failure to appear at the arraignments, the trial court continued the cases to its corporate docket and sent out summonses, but Bryce Peters again failed to appear. The City's

---

[1]See appendix.

clerk of court entered "not guilty" pleas on behalf of Bryce Peters in the respective cases and issued orders via regular U.S. mail to appear for trial. Bryce Peters failed to appear.

{¶6} As a result of Bryce Peters' failure to appear, the trial court scheduled show-cause hearings in the respective cases. The trial court notified Bryce Peters via regular U.S. mail that sanctions for contempt may include per diem fines. Bryce Peters failed to appear at any of the show-cause hearings, the trial court found it in contempt, and issued per diem fines of $1,000, beginning on the day following the date he was ordered to appear, until such time as Bryce Peters made an appearance or entered a plea.

{¶7} Thereafter, the trial court scheduled status hearings approximately every 45 days, but Bryce Peters failed to attend. At each status hearing, the trial court converted the accrued per diem fines from the date of the previous status hearing, in the respective cases, to civil judgments for collections. After more than a year had elapsed since Bryce Peters was found in contempt, the trial court ceased scheduling status hearings.

{¶8} Eventually, the trial court issued an order for Bryce Peters to be re-summoned by bailiff service. On February 3, 2012, the housing court obtained personal service on Bryce Peters. On February 7, 2012, a representative of Bryce Peters appeared and entered not guilty pleas in the 23 underlying cases.

{¶9} On February 23, 2012, Bryce Peters filed notices of appeal relative to the contempt findings in the respective cases. We dismissed the appeals as untimely, but Bryce Peters filed an application for reconsideration, which we granted, and reinstated the appeal. On April 26, 2012, we consolidated the 23 separate cases for briefing, hearing, and disposition.

## Contempt Finding

{¶10} Where appropriate, because of its interrelatedness, we will address Bryce Peters' assigned errors together.

{¶11} Preliminarily, an appellate court's standard of review of a trial court's contempt finding is abuse of discretion. *Cattaneo v. Needham*, 5th Dist. Licking No. 2009 CA00142, 2010-Ohio-4841, citing *State ex rel., Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 573 N.E.2d 62 (1991). An "abuse of discretion" connotes that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983); *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

{¶12} In the instant case, as previously noted, Bryce Peters had been summoned to appear in court in reference to numerous housing code violations, spanning multiple properties, and resulting in 23 separate cases filed against the corporate entity. When Bryce Peters failed to appear at the arraignment, the trial court placed the cases on its corporate docket, ordered Bryce Peters to appear, but to no avail.

{¶13} The trial court then ordered Bryce Peters to appear to show cause why it should not be held in contempt, but Bryce Peters was still unresponsive. Ultimately, the trial court found Bryce Peters in contempt, issued a per diem fine of $1,000, in each case, for every day that the corporation remained in contempt. After the trial court found Bryce Peters in contempt and began assessing the per diem fines, a corporate representative appeared, resulting in the cessation of the fines.

{¶14} Not long ago, we addressed substantially identical issues in *Cleveland v. Paramount Land Holdings, LLC*, 8th Dist. Cuyahoga Nos. 96180, 96181, 96182, and 96183, 2011-Ohio-5382. In *Paramount*, numerous health code violations were found at multiple properties of the owner. Because the owner failed to appear, a contempt finding was entered

and daily accumulated fines were converted into a judgment against the owner. Later, the owner appeared in court, entered pleas of no contest in the respective cases, was found guilty, and fined. Thereafter, the owner filed motions to vacate the fines relating to the contempt findings. The trial court denied the motions and the owner appealed.

**{¶15}** On appeal, we found that, as a result of the owner's repeated failure to appear, the trial court had no alternative but to find the owner in civil contempt and begin assessing a daily contempt fine, per property, in an effort to compel the owner's attendance. When the owner appeared in court, the trial court discontinued the daily fine. In *Paramount*, we held that the immediate abandonment of the daily fines was conclusive evidence that its purpose was to coerce the owner's attendance and not to punish the owner for a completed act. We find our reasoning in *Paramount* instructive.

**{¶16}** In the third and fifth assigned errors, Bryce Peters argues the trial court abused its discretion by issuing show-cause or contempt citations and ultimately finding the corporation in indirect contempt.

**{¶17}** In the instant case, both parties agree that the trial court found Bryce Peters in indirect contempt. Indirect contempt is "misbehavior that occurs outside the actual or constructive presence of the court." *Pirtle v. Pirtle*, 2d Dist Montgomery No. 18613, 2001-Ohio-1539. However, they disagree on whether the contempt was civil or criminal. Bryce Peters argues the contempt was criminal and thus, it was entitled to a hearing. The City agrees that under the law, criminal contempt would require a hearing, but it maintains that the contempt was civil.

**{¶18}** Courts classify contempt as criminal or civil, depending upon the purpose of the sanction imposed. *Camp-Out, Inc. v. Adkins*, 6th Dist. Wood No. WD-06-057, 2007-Ohio-3946;

*see also* R.C. 2705.01(A). Sanctions for criminal contempt are punitive, rather than coercive, in nature, and are aimed at vindicating the authority of the court. *Id*. Criminal contempt sanctions are

**{¶19}** imposed as "punishment for the completed act of disobedience" and usually consist of fines and/or an unconditional period of incarceration. *McCall v. Cunard*, 6th Dist. Sandusky No. S-07-013, 2008-Ohio-378, citing *In re Purola*, 73 Ohio App.3d 306, 596 N.E.2d 1140 (1991).

**{¶20}** A sanction imposed for civil contempt, on the other hand, is remedial or coercive in nature and is imposed for the benefit of the complainant. *Id*., citing *Carroll v. Detty*, 113 Ohio App.3d 708, 711, 681 N.E.2d 1383 (4th Dist.1996). Any sanction imposed for civil contempt must afford the contemnor the right to purge himself of the contempt. *DeLawder v. Dodson*, 4th Dist. Lawrence No. 02CA27, 2003-Ohio-2092, ¶ 10.

**{¶21}** Here, the record establishes that the trial court found Bryce Peters in indirect civil contempt. The contempt was civil because the trial court's sanctions were designed to coerce Bryce Peters to appear. Bryce Peters' assertion that it was inherently punitive and therefore criminal is simply inaccurate. Punishment is inherent in contempt. *In re J.M.*, 12th Dist. Warren No. CA2008-01-004, 2008-Ohio-6763, ¶ 47. The fact that a contempt finding may result in punishment does not necessarily define it as criminal contempt. The discussion below will reveal that coercion was the main focus of the trial court's decision.

**{¶22}** At the outset, we note that Bryce Peters was duly served with the summonses and the complaints by certified mail for all 23 cases, that was signed for in the majority of instances by one of its agents, but failed to appear for the arraignments. After Bryce Peters failed to

appear at the arraignments for the respective cases, the trial court placed the cases on its corporate docket and sent out notices by regular U.S. mail. Bryce Peters failed to appear.

{¶23} Finding Bryce Peters unresponsive, the trial court scheduled show-cause hearings for Bryce Peters to appear and present evidence why it should not be held in contempt for its repeated failure to appear. However, this too fell short of motivating Bryce Peters to appear at the show-cause hearing, despite being duly notified.

{¶24} It was at this stage that the trial court resorted to finding Bryce Peters in contempt and began assessing the daily fines to coerce its appearance. After more than a year of the trial court's assessment of the daily fines in the respective cases, Bryce Peters entered an appearance. Once Bryce Peters appeared, the trial court immediately discontinued the daily fines.

{¶25} Despite Bryce Peters' argument to the contrary, the trial court's decision to find it in civil contempt and begin assessing a daily contempt fine of $1,000 per day for each case, was geared towards compelling the corporate entity's attendance. We conclude, as we did in *Paramount*, that the immediate cessation of the daily fines is conclusive evidence that its purpose was to coerce Bryce Peters' attendance and not to punish it for a completed act.

{¶26} Nonetheless, specifically, within the fifth assigned error, Bryce Peters argues that there is no evidence that the company acted intentionally in failing to appear. However, we have previously held that a violation of a court order need not be willful to constitute civil contempt. *Kurincic v. Kurincic*, 8th Dist. Cuyahoga No. 76505, 2000 Ohio App. LEXIS 3957 (Aug. 31, 2000).

{¶27} Further, because the purpose of sanctions in a case of civil contempt is to compel the contemnor to comply with lawful orders of a court, the fact that the contemnor may not have acted in intentional disregard of a court order is not a defense to a charge of civil contempt.

*Watson v. Wolsonovich*, 112 Ohio App.3d 565, 569, 679 N.E.2d 350 (7th Dist.1996).   As such, we find no abuse of discretion   in the trial court's decision.    Accordingly, we overrule the third and fifth assigned errors.

## Jurisdiction

**{¶28}**   In the first and second assigned errors, Bryce Peters argues he was not properly served with the show-cause orders or contempt citations, thus, the trial court lacked jurisdiction. Specifically, Bryce Peters argues the contempt proceeding was an independent proceeding and the trial court should have also served notices by certified mail or should have issued a warrant to effect its attendance.

**{¶29}** In the discussion of the third and fifth assigned errors, we concluded that the trial court found Bryce Peters in civil contempt.   Where contempt is civil in nature, the civil rules regarding notice apply.   *Home S&L Co. v. Midway Marine, Inc.,* 7th Dist. Mahoning No. 10 MA 109, 2012-Ohio-2432, citing *Bierce v. Howell*, 5th Dist. Delaware No. 06 CAF 05 0032, 2007-Ohio-3050.   Civ.R. 5 governs service of papers subsequent to the original complaint. *Scarnecchia v. Rebhan*, 7th Dist. Mahoning No. 05 MA 213, 2006-Ohio-7053.

**{¶30}** Under Civ.R. 5(B), subsequent to successful service of the complaint, service by mail is complete upon mailing.    *Home S&L Co., supra.*   No return of service is required under the civil rules, under the contempt statute, or under case law. *Id.*    Contrary to Bryce Peters' assertion, no Ohio court has held that personal service is required to perfect a contempt motion, unless personal service is ordered by the court pursuant to Civ.R. 5. *Id.*

**{¶31}** Further, there is no specified manner of process required for the filing of a motion for civil contempt, a person serving such a motion may do so in any manner authorized by the Ohio Rules of Civil Procedure.    *In re I.U.*, 2d Dist. Champaign No. 2007 CA 9,

2007-Ohio-6264, citing *Quisenberry v. Quisenberry*, 91 Ohio App.3d 341, 346, 632 N.E.2d 916 (2d Dist.1993).

{¶32} In the instant case, the record reveals that Bryce Peters was duly served with the summonses and complaints for the 23 cases that resulted from the multitude of code violations in and about its numerous properties. Given that the show-cause orders or contempt citations were services of papers subsequent to the original complaint, pursuant to Civ.R. 5, these could be served by ordinary mail. This is exactly what happened in the instant case. As such, the trial court did not lack jurisdiction as Bryce Peters has asserted.

{¶33} Further, regarding the notion that the trial court should have issued a warrant, we note, pursuant to R.C. 2941.47, the trial court could not issue a warrant to secure the corporation's appearance. As such, there was no abuse of discretion. Accordingly, we overrule the first and second assigned errors.

## Trial in Absentia

{¶34} In the fourth assigned error, Bryce Peters argues the trial court abused its discretion by trying, convicting, and sentencing it in absentia. In support of its contention, Bryce Peters cites our decision in *Cleveland v. Washington Mut. Bank*, 179 Ohio App.3d 692, 2008-Ohio-6956, 903 N.E.2d 384, vacating the conviction from a trial that was held in absentia. That decision was affirmed by the Ohio Supreme Court in *Cleveland v. Washington. Mut. Bank*, 125 Ohio St.3d 541, 2010-Ohio-2219, 929 N.E.2d 1039.

{¶35} However, unlike *Washington Mut.*, where the trial of the underlying criminal matter was held in absentia, only the contempt findings took place outside Bryce Peters' presence. The contempt findings took place in "absentia" because Bryce Peters chose not to appear. Thus, the instant case is distinguishable from *Washington Mut*.

{¶36}   Among the rights afforded to both civil and criminal contemnors are notice and an opportunity of a hearing on the matter.   *Bierce,* Delaware No. 06 CAF 05 0032, 2007-Ohio-3050, citing *Adams v. Epperly*, 27 Ohio App.3d 51, 499 N.E.2d 374 (9th Dist.1985). In a criminal contempt, unlike in a civil contempt, the alleged contemnor must not only have the opportunity to be present, he must also actually be present at the criminal contempt hearing. *Id*.

{¶37} In a civil contempt, unlike criminal, an alleged contemnor is entitled only to those rights afforded in a civil action.   *Id.*, citing *Schrader v. Huff*, 8 Ohio App.3d 111, 456 N.E.2d 587 (9th Dist.1983).   Given that this was an indirect civil contempt proceeding, Bryce Peters was only entitled to notice and an opportunity to be heard.   The trial court provided said notice, but Bryce Peters failed to appear.

{¶38} Thus, contrary to Bryce Peters' assertion, an alleged contemnor in a civil contempt action may be tried in absentia if he or she was provided appropriate notice and an opportunity to be heard.    Accordingly, we overrule the fourth assigned error.

## Excessive Fines

{¶39}   In the sixth assigned error, Bryce Peters argues the contempt fines assessed violated its right to be free excessive fines and punishment as guaranteed by the Eighth Amendment to the United States Constitution.

{¶40} As we have previously discussed, the trial court found Bryce Peters in indirect civil contempt.   The excessive fines clause of the Eighth Amendment does not apply to civil contempt sanctions. *Ohio Elections Comm. v. Ohio Chamber of Commerce & Citizens for a Strong Ohio*, 158 Ohio App.3d 557, 2004-Ohio-5253, 817 N.E.2d 447 (10th Dist.), citing *In re Grand Jury Proceedings* (7th Cir. 2002), 280 F.3d 1103, 1110 ("a fine assessed for civil contempt does not implicate the Excessive Fines Clause"). *See also United States v. Mongelli* (2d

Cir. 1993), 2 F.3d 29, 30; *Spallone v. United States*, 487 U.S. 1251, 1257, 109 S.Ct. 14, 109 S.Ct. 20, 101 L.Ed.2d 964 (1988).

**{¶41}** Here, given the civil nature of the contempt proceeding, the Excessive Fines Clause of the Eighth Amendment does not apply. *Paramount* at ¶ 2. Accordingly, we overrule the sixth assigned error.

## Opportunity to Purge Civil Contempt

**{¶42}** In the seventh assigned error, Bryce Peters argues the trial court failed to provide it with an opportunity to purge the contempt.

**{¶43}** A sanction for civil contempt must allow the contemnor to purge himself of the contempt. *Coventry Grp., Inc. v. J.L. Gottlieb Agency, Inc.*, 8th Dist. Cuyahoga No. 94185, 2010-Ohio-4135, citing *Tucker v. Tucker*, 10 Ohio App.3d 251, 461 N.E.2d 1337 (10th Dist.1983).

**{¶44}** In the instant case, the opportunity to purge the contempt involved the simple act of appearing in court. The record reveals that when Bryce Peters finally appeared in court, the trial court immediately terminated the per diem fines on the respective cases. Because Bryce Peters was given the opportunity to purge its contempt by appearing in court and the fines stopped the moment an appearance was entered, we find no abuse of discretion. *Paramount* at ¶ 17.

**{¶45}** Nonetheless, Bryce Peters argues the company was not given the opportunity to purge because the accumulated per diem fines remained after it made an appearance. We are not persuaded. If the contempt fines were wiped clean, once the contemnor appeared in court, there would be no incentive for the offending party to hastily appear to stop the accumulating fines. Wiping the fines clean as Bryce Peters urges, would render the coercive intent of civil contempt

toothless.    Without this contempt power in the court, any summoned party could obstruct the administration of justice and impede the operation of the entire judicial system.

{¶46} We conclude that finding Bryce Peters in indirect civil contempt was geared to coerce its attendance and the accumulating per diem fines served to get the company's attention.  An individual charged with civil contempt purges himself or herself of the contempt by appearing before the court and demonstrating compliance with the court's order.  *Purola*, *supra*, 73 Ohio App.3d at 311.  This is all that is required and exactly what happened in the instant case.  Consequently, we find no abuse of discretion.    Accordingly, we overrule the seventh assigned error.


**Failure to Issue Written Charges**

{¶47} In the eighth assigned error, Bryce Peters argues the trial court abused its discretion by failing to properly issue written charges.

{¶48} R.C. 2705.05(A) prescribes sanctions for contempt violations, but courts are not required to follow it.  *Copley Twp. Bd. of Trustees v. W. J. Horvath Co.*, 193 Ohio App.3d 286, 2011-Ohio-1214, 951 N.E.2d 1054 (9th Dist.).   The Ohio Supreme Court has held that, "[a]lthough * * * the General Assembly may prescribe procedure in indirect contempt cases, the power to punish for contempt has traditionally been regarded as inherent in the courts and not subject to legislative control." *Id.*, quoting *Cincinnati v. Cincinnati Dist. Council 51*, 35 Ohio St.2d 197, 207, 299 N.E.2d 686 (1973).

{¶49} In the instant case, the trial court's notice stated in pertinent part as follows:

**Defendant having failed to appear, a representative of the defendant is ORDERED to appear before this Court * * * to show cause why the**

**defendant, or one of its representatives, should not be punished for criminal or civil contempt of court. As a corporation, the defendant is hereby advised that it must be represented by counsel in order to appear. At the contempt proceedings, the defendant may obtain the presence of witnesses in its own behalf by compulsory process if necessary and may cross-examine the witnesses against it. Contempt must be proven by clear and convincing evidence (civil contempt) or beyond a reasonable doubt (criminal contempt). Sanctions for contempt may include a per diem fine, or such other relief as the court deems appropriate.**

{¶50} Despite Bryce Peters' assertions, the above notice sufficiently apprised it that civil or criminal contempt charges could be brought against it; that as a corporation, it had to be represented by counsel, explained its rights regarding calling witnesses and cross-examining witnesses against it, and outlined the standard of proof. As a result of Bryce Peters' repeated failure to appear, the trial court had no alternative but to find it in civil contempt and begin assessing a daily contempt fine of $1,000 per property in an effort to compel its attendance. As such, we find no abuse of discretion. Accordingly, we overrule the eighth assigned error.

{¶51} Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to Cleveland Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

PATRICIA ANN BLACKMON, JUDGE

MARY J. BOYLE, P.J., CONCURS;
KENNETH A. ROCCO, J., DISSENTS
(SEE ATTACHED DISSENTING OPINION.)


KENNETH A. ROCCO, J., DISSENTING:

**{¶52}** Although I agree with the majority's determination that this case involves charges of indirect, civil contempt, I would reverse on the basis that Bryce Peters was not properly served with notice of the contempt charges.

**{¶53}** When one is accused of indirect, civil contempt, due process requires that the accused is provided with adequate notice of the charges against him or her. *Sansom v. Sansom*, 10th Dist. Franklin No. 05AP-645, 2006-Ohio-3909, ¶ 26. "Notice is sufficient when it apprises an alleged contemnor of the charges * * * so that he or she is able to prepare a defense." *Id.* at ¶ 27. Without proper notice, a later contempt finding is invalid. *Id.* Notice is effectuated by proper service of process, which is determined on a case-by-case basis. *Tube City, Inc. v. Halishak*, 8th Dist. Cuyahoga No. 88287, 2007-Ohio-2118, ¶ 19.

**{¶54}** The issue in this case comes down to which civil rule regarding service of process applies. Bryce Peters was served with notices of the contempt charges and the impending contempt hearings by regular mail. If Civ.R. 5 applies, then service by regular mail was sufficient, and Bryce Peters received adequate notice of the contempt charges. But if Civ.R. 4.3 applies, then Bryce Peters did not receive adequate notice, because, as an out-of-state corporation, it was entitled to receive notice via certified mail or personal service. I would hold that when contempt charges are levied against an out-of-state party, that party must be served with notice of the contempt charges in conformance with Civ.R. 4.3(B).

**{¶55}** A contempt proceeding is "essentially a new and independent proceeding." *Ohio Patrolman's Benevolent Assn. v. Cuyahoga Cty. Sheriff*, 8th Dist. Cuyahoga No. 82238, 2003-Ohio-4349, ¶ 11. While the contempt proceeding is related to the original case, it involves new issues. *Hansen v. Hansen*, 132 Ohio App.3d 795, 799, 726 N.E.2d 557 (1st Dist.1999), citing 17 Corpus Juris Secundum (1963) 159-160, Contempt, Section 62(6). One of those issues is often whether the party had notice of the pendency of the original case.

**{¶56}** This conundrum is highlighted in the instant case: the question as to whether Bryce Peters had knowledge about the underlying charges was the very subject of the contempt proceedings. There was no evidence in the record that Bryce Peters had knowledge of the court dates that had been set forth in the original summonses, and this issue went to the very heart of the contempt charges.

**{¶57}** For this reason, the majority's reliance on *Home S&L Co. v. Midway Marine, Inc.,* 7th Dist. Mahoning No. 10 MA 109, 2012-Ohio-2432, is misplaced. In *Home S&L*, the Seventh District concluded that Civ.R. 5(B) applied to the contempt motion, but in that case the defendant had already appeared in the action. Because of the defendant's active participation in the case, there was no question that he was aware of the underlying proceedings. Unlike the instant case, the defendant's awareness of the underlying action was not the subject of the contempt proceedings. Furthermore, the contempt motion was served on the defendant and on his attorney by both regular and certified mail. In contrast, in the instant case, Bryce Peters had never even entered an appearance in any of the underlying cases, and service was attempted only by regular mail.[2]

---

[2]In another case cited by the majority, the Second District concluded that Civ.R. 5(B) applied, but the court also noted that the original motion for contempt was *personally* served on the alleged

{¶58} Finally, to the extent that this case presents a close question, I am surprised that the City, in an abundance of caution, did not instruct the clerk's office to perfect service via certified mail or personal service. As noted in the majority opinion, there were 23 separate cases filed against Bryce Peters. There is no doubt that a fair amount of City resources were used in investigating these cases and in bringing these actions before the trial court. It would seem prudent under these circumstances to take every measure to ensure that Bryce Peters received adequate notice.

{¶59} Because a contempt proceeding is an independent proceeding, because Bryce Peters had not entered an appearance or otherwise acted in a manner indicating awareness about the underlying charges against it, and because the question as to whether Bryce Peters knew about the underlying matter was the very subject of the contempt charges, I would hold that the court was required to serve notice of the contempt charges in a manner consistent with Civ.R. 4.3. Because Bryce Peters was not served personally or by certified mail, Bryce Peters was not properly notified about the contempt charges. Accordingly, Bryce Peters could not reasonably be expected to appear and to present a defense to the contempt charges. Because the majority holds otherwise, I respectfully dissent.

---

contemnor. *Quisenberry v. Quisenberry*, 91 Ohio App.3d 341, 346, 632 N.E.2d 916 (2d Dist.1993).

## APPENDIX

### Assignments of Error

I. The trial court abused its discretion and erred to the prejudice of defendant-appellant by failing to properly serve defendant-appellant with notice of the orders to appear and show cause and/or the charges of contempt, and therefore violated defendant-appellant's state and federal constitutional rights to due process of law.

II. The trial court abused its discretion and erred to the prejudice of appellant by issuing a "show-cause" order and/or a contempt citation prior to obtaining personal jurisdiction over the appellant. As such, the trial court lacked subject matter and/or personal jurisdiction over the contempt citations. (App. Case Nos.: CA 12 098079; CA 12 098015; CA 12 098009).

III. The trial court abused its discretion and erred to the prejudice of appellant by issuing a "show-cause" order and/or a contempt citation in response to appellant's failure to appear in response to summons and/or the court abused its discretion and/or the court abused its discretion and erred to the prejudice of appellant by issuing "show-cause" orders, finding appellant guilty of contempt of court for failing to appear in response to summonses and/or court orders to appear herein, and/or by imposing fines of $1,000 per day for said contempt, all in violation of R.C. 2935.11.

IV. The trial court abused its discretion and erred to the prejudice of appellant by trying, convicting and sentencing the appellant in absentia for indirect contempt of court, in violation of appellant's state and federal constitutional rights to be present at all critical stages of a criminal proceedings, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.
V. The trial court abused its discretion and erred to the prejudice of appellant by finding appellant in indirect contempt of court, as the evidence presented at the contempt hearing was insufficient to establish by evidence beyond a reasonable doubt that appellant acted intentionally in failing to appear for trial. (1-21-11 Journal Entry 328-231; Tr. pp. 1-9).

VI. The trial court abused its discretion by subjecting appellant to daily contempt fines while also issuing warrants for appellant's arrest, in violation of appellant's state and federal constitutional rights to be free from excessive fines and/or excessive punishment, as guaranteed by the Eighth and

Fourteenth Amendments to the United States Constitution and Article I, Section 9 of the Ohio Constitution.

**VII. The trial court abused its discretion and erred to the prejudice of appellant by failing to provide the contemnor with an opportunity to purge the indirect civil contempt sanctions.**

**VIII. The trial court abused its discretion and erred to the prejudice of appellant by failing to properly charge appellant in writing and/or by shifting the burden of proof upon appellant in its "order to show cause."**