[Cite as *Home S. & L. Co. v. Midway Marine, Inc.*, 2012-Ohio-2432.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| HOME SAVINGS AND LOAN CO. OF YOUNGSTOWN, OHIO | ) | CASE NO. 10 MA 109 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| MIDWAY MARINE, INC. dba MIDWAY LEASING, INC., et al. | ) | |
| | ) | |
| DEFENDANTS-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from the Court of Common
                               Pleas of Mahoning County, Ohio
                               Case No. 09 CV 1971

JUDGMENT:                      Affirmed.

APPEARANCES:

For Plaintiff-Appellee:        Atty. James G. Floyd
                               1200 Metropolitan Tower
                               Youngstown, Ohio  44503

For Defendant-Appellant:       Atty. John C. Ragner
                               Atty. Andrew T. Hayes
                               Atty. Steven R. Hobson
                               Towne, Hanna & Rasnick Co., L.P.A.
                               388 South Main Street, Suite 402
                               Akron, Ohio  44311

JUDGES:

Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

                               Dated:  May 25, 2012

[Cite as *Home S. & L. Co. v. Midway Marine, Inc.*, 2012-Ohio-2432.]

WAITE, P.J.

## Summary

**{¶1}** In this appeal Mercure presents three issues: first, whether a trial court's civil contempt finding becomes criminal due to the court's obvious disapproval of Appellant's actions. Second, whether Appellant's due process rights were violated by an alleged failure of service argument that Appellant failed to raise in the trial court. Third, whether Appellant received ineffective assistance of counsel in the trial court. Our review of the record reveals that all of Appellant's arguments lack merit and the trial court's decision is affirmed.

**{¶2}** This appeal revolves around a finding of contempt against Appellant, Michael Mercure who operated a business known as Midway Marine, Inc. Midway Marine, Inc., while a party to the underlying action, is not a party to the instant appeal. The record reveals the following: Appellant Mercure, on behalf of Midway Marine Inc. executed a secured purchase money loan agreement with Home Savings & Loan Co., Appellee herein, for the purchase of a high performance yacht and motor. The yacht and motor secured payment on the note and a lien was recorded on the title to the yacht by Appellee. Several years after the initial transaction, payment on the note had deteriorated from erratic to nonexistent. Appellee simultaneously filed a replevin action to recover the yacht and a complaint for the money due on the note. Appellee sought and received a writ of possession. Appellant Mercure was served with the writ of possession but failed to produce the yacht. When Mercure was deposed he acknowledged the debt, but refused to reveal

the location of the yacht. He attempted to invoke his right to remain silent in response to any question concerning the present or past locations of the yacht and Mercure's dealings with a Texas man who made several loan payments on his behalf. On the record during deposition, Mercure was served with a second copy of the writ of possession, and was warned that continued noncompliance would result in further action by the court. Nevertheless, Mercure failed to produce the yacht. A contempt motion was filed. Pursuant to the affidavit of service, the motion was served on both Mercure and his counsel via regular and certified mail. Mercure failed to appear at the hearing, although his counsel was present. Counsel argued that the hearing could not go forward because there was no return of service for Mercure in the record. After the magistrate found him in contempt, but before the trial court adopted the finding, Mercure filed an affidavit detailing his efforts to recover the yacht. The trial court subsequently found Appellant in contempt and ordered personal service of the subsequent judgment entry. The contempt entry was not served on Appellant until July of the following year, and this appeal was timely filed.

## Facts

{¶3} The underlying suit from which the contempt action arose involved both a replevin action seeking the return of collateral and an action on a promissory note executed by Appellant Mercure on behalf of Midway Marine, Inc. to Appellee Home Savings and Loan Co. The note was executed on July 30, 2003, and secured by a 50' Hustler performance yacht and its 470 HP Mercruiser motor, which were to be purchased with the proceeds of the loan. On May 27, 2009, Appellee, alleging a

default on the note dating from May 8, 2007, filed a complaint in the Mahoning County Court of Common Pleas foreclosing its interest in the yacht and seeking an immediate writ of possession. Appellee also requested a money judgment for $416,740.61 in unpaid principal and interest and an additional $57.19 in daily accrued interest while the note remained due and unpaid. Appellee simultaneously filed an ex-parte motion for writ of possession and an affidavit in support as well as a motion for the appointment of a process server. As grounds in support of a finding that there was a "present danger that the property will be disposed of or concealed and placed beyond the jurisdiction of the Court" necessitating an extraordinary writ, Appellee averred that there had been repeated unanswered demands that Mercure produce the collateral and that Appellee had some indication that Mercure may have attempted to sell the yacht and motor to a Texas resident who also refused to produce the collateral. (5/27/09 Motion for an Order of Possession Without a Hearing Trial, ¶12.)

{¶4} On May 28, 2009 the trial court set bond for both Mercure and Midway Marine, Inc., and granted Appellee a writ of possession. A summons was issued and a process server appointed that same day. On June 8, 2009 the appointed process server filed three returns of service. The first indicated that after five attempts, the residential address provided by Appellee for Mercure appeared to be vacant. The second and third returns reflected personal service on Mercure and service on Midway Marine, both at the same address, and signed for by a "Mr. Parker." On June 26, 2009 Mercure filed an answer through counsel generally denying the

allegations in the complaint and alleging the following defenses: accord and satisfaction; assumption of risk; contributory negligence; laches; waiver; estoppel; venue; and fraud. (6/26/09 Answer.)

{¶5} During the same period, Appellee conveyed the writ of possession to the sheriff's department, which made several unsuccessful attempts to locate and secure the yacht and motor.

{¶6} On August 10, 2009, Appellee deposed Mercure in connection with this matter. At the deposition, Mercure repeatedly stated he wished to invoke his Fifth Amendment rights in response to any question concerning the whereabouts of the yacht and his dealings with Warren Tillerson, the Texas resident who may have had possession of the yacht and who made several loan payments to Home Savings on behalf of Mercure for the note secured by the yacht. (Mercure Depo., pp. 6-7, 34-40.) Mercure was personally served the May 28, 2009 writ of possession on the record during the deposition and was informed that the court would be notified of any continued failure to produce the yacht. Mercure failed to produce the yacht or any information to lead to its discovery.

{¶7} On August 14, 2009, Appellee filed a show cause motion due to Mercure's failure to produce the yacht and refusal to disclose its location. Appellee raised, as cause, Mercure's attempts to invoke the Fifth Amendment during the deposition and asked that he be held in direct contempt, pursuant to R.C. 2705, for his refusal to answer and his failure to produce the yacht and motor. The show cause motion included a notice of hearing for August 28, 2009 at 2:00 p.m., and was

signed by counsel for Appellee. Attached to the motion was a copy of the trial court's May 28, 2009 writ of possession and an affidavit of service, executed by a Judy Rader and notarized by a Susan Pritchard. The affiant, Ms. Radar, who was not Appellee's counsel, swore that the motion was served on both Mercure and his counsel via both regular and certified U.S. Mail. The affiant included the certified mail receipt numbers in her affidavit, one of which was incomplete.

{¶8} The show cause hearing was held on August 28, 2009. Counsel for Mercure appeared but Mercure, himself, did not. Those present stipulated that the yacht had not been delivered to Home Savings. Mercure's counsel argued during the hearing that the record did not reflect a return of service on Mercure. He did not, however, argue that his client had not been served. It appears inarguable that Mercure's counsel received the motion, in light of his presence at the hearing. The hearing went forward as scheduled and the magistrate filed a decision on November 12, 2009.

{¶9} On November 23, 2009, Mercure executed and filed a copy of an affidavit which appears in the record as a "Notice of Efforts to Purge." The document in the record is a copy and it is unclear whether the actual affidavit was ever filed. In it, Mercure states that he purchased a Hustler Power Boat in 2003 and financed the purchase through Home Savings. He swears that he delivered the yacht to a Mr. Tillerson, of Texas, in November of 2007 and that Tillerson agreed to be responsible for payment of the remainder of the obligation to Home Savings until it was "fully and completely satisfied." (Mercure Aff., ¶4.) Attached to, but not referenced in, the

affidavit is a copy of an email titled "boat agreement," the body of which identifies Mercure and Tillerson as the parties to the agreement and indicates that Tillerson would take over the remaining 119 loan payments of $2900.00 per month for the yacht that is the subject of this action. The document appears to have been signed by both parties.

{¶10} Mercure acknowledged in his affidavit that on November 18, 2009 he was aware of the "contempt citation against him," which appears to refer to the magistrate's November 12, 2009 decision finding him in contempt, copies of which were served by the clerk on November 17, 2009. He explained that his efforts to purge contempt consisted of a phone call to Tillerson requesting that the yacht be made available to him. Mercure avers that Tillerson "threatened to kill me and advise that 'somebody came to his house and took the boat and he did not want to get involved,'" and that Tillerson also told him that the yacht had been kept in a locked storage facility at all times. (Mercure Aff., ¶9-10.) Mercure concluded that he had, in the form of this phone call, "taken all reasonable measures to procure the boat in question for return to Home Savings Bank" and that it was his belief that the yacht either remained with Tillerson in Texas or had already been repossessed by Appellee, Home Savings. (Mercure Aff., ¶11-12.) Appellee filed in opposition to Mercure's notice of efforts to purge contempt. It did not object to the form of the affidavit and unincorporated exhibit, but detailed the contradictions between the information contained in the affidavit and Mercure's repeated, apparently unmerited, invocations of his Fifth Amendment rights during the August deposition. Appellee

identified each discrepancy and urged the court to recognize Mercure's evident perjury concerning his knowledge of the location of the yacht and his possibly frivolous invocation of the Fifth Amendment. No further document or motion was filed by either party on this issue.

**{¶11}** The trial court adopted the magistrate's decision in the absence of objections on December 17, 2009 and it was entered in the record on December 23, 2009. The trial court specifically found Mercure was in indirect civil contempt and ordered him to either (1) serve thirty (30) days in jail and pay a fine of $250.00 or (2) purge contempt by producing the yacht within ten days of the entry of the court's judgment. The trial court specifically ordered personal service of the judgment entry on Mercure. Docket entries on December 29, 2009 show service to Mercure of the entry was attempted via regular and certified U.S. Mail in addition to personal service. The order for service was returned indicating that there was a failure to make contact on January 7, 2010. On March 31, 2010, Appellee sought and received leave to use a private process server to serve the December 23, 2009 judgment. No return of service was filed. On July 8, 2010 Appellee was again granted leave for private party service of the judgment; return of service was filed July 9, 2010.

**{¶12}** Between the December 23, 2009 judgment entry finding Mercure in contempt and service of the contempt order on July 9, 2010, Appellee sought and received summary judgment with regard to the amount due on the promissory note. The initial summary judgment motion was filed on March 25, 2010. Mercure filed timely objections to the magistrate's subsequent April 26, 2010 decision as well as a

separate motion to vacate the decision on May 7, 2010. Both motions alleged that counsel for Mercure had not received service of the summary judgment motion and listed failure of service as the sole basis for relief. Neither motion was supported by affidavit or other evidence. Appellee filed in opposition to the motion to vacate on May 10, 2010. The trial court adopted the magistrate's decision and denied the motion to vacate in two separate orders on June 4, 2010.

**{¶13}** During the same period, Appellee also sought, and the magistrate signed, a release of the replevin bond, as the collateral was now subject to the trial court's contempt order. The order releasing bond has apparently not yet been adopted by the trial court. The action on the note itself was resolved in summary judgment; the replevin action is pending on the outcome of this appeal.

## Procedural History

**{¶14}** Mercure initially filed his notice of appeal on July 12, 2010. His July 12 notice identified a June 14, 2010 judgment entry as the final order on appeal. As we subsequently noted, there was no order entered by the trial court on June 14, 2010. Instead there was a June 4, 2010 entry, adopting the magistrate's decision granting summary judgment to Appellee Home Savings with regard to the action on the note. According to the docket, the service copies were issued and mailed on June 14, 2010. On July 27, 2010 Mercure filed an amended notice of appeal, identifying the trial court's December 23, 2009 judgment entry as the basis for appeal, claiming the 2009 entry was not served on either he or his counsel until July 9, 2010. Given the multiple bases cited for appeal and the seeming untimeliness of the conflicting

notices, we ordered Mercure to prepare a jurisdictional memorandum clarifying the order appealed from and establishing the timeliness of the filing. Mercure complied and explained that according to the record, the trial court's December 23, 2009 judgment entry had not been served on him until July 9, 2010. (10/14/10 J.E.) Around the same time as this Court's entry concerning the need for a jurisdictional memorandum, Mercure's counsel also sought and later received leave to withdraw. New counsel entered his appearance on the record.

**{¶15}** A motion for stay of execution pending the outcome of appeal had been filed in the trial court on August 12, 2010. On September 16, 2010 the trial court indicated that the motion would be taken under advisement, and entered no subsequent ruling. New counsel filed a motion for stay of execution in this Court on September 28, 2010, referring to the earlier motion and renewing the request, citing principles of fairness. We granted Mercure's motion for stay of execution on October 14, 2010, and held his thirty days of incarceration and $250.00 fine in abeyance pending the outcome of this appeal. Mercure has filed his merit brief. No Appellee's brief has been filed.

## Argument and Law

**{¶16}** Mercure's first and second assignments of error challenge the procedure followed and the penalty imposed by the trial court pursuant to R.C. 2705. Mercure alleges that the trial court went beyond the scope of the rule with regard to civil contempt and, in essence, imposed a punitive criminal penalty that it misidentified as indirect civil contempt violation. The trial court's compliance with the

statute, the civil rules and applicable caselaw is determinative of both assignments and for this reason they will be discussed together.

<u>ASSIGNMENT OF ERROR NO. 1</u>

THE TRIAL COURT VIOLATED MR. MERCURE'S DUE PROCESS RIGHTS AND ERRED BY SENTENCING MR. MERCURE TO 30 DAYS IN JAIL FOLLOWING A CONTEMPT HEARING HELD IN ABSENTIA AND WHERE MR. MERCURE DID NOT RECEIVE PROPER OR REASONABLE NOTICE, TIME TO PREPARE A DEFENSE, AND AN OPPORTUNITY TO BE HEARD AT HEARING.

<u>ASSIGNMENT OF ERROR NO. 2</u>

THE TRIAL COURT ERRED IN ORDERING IMPRISONMENT TO MR. MERCURE AS A PUNISHMENT FOR A CIVIL DEBT IN VIOLATION OF ARTICLE I, SECTION 15 OF THE OHIO CONSTITUTION.

{¶17} A trial court's contempt finding is reviewed for abuse of discretion. *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11, 417 N.E.2d 1249 (1981). Abuse of discretion connotes more than an error of judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its

judgment for that of the trial court." *In re Jane Doe 1*, 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991).

{¶18} Mercure argues that in the matter below, although the trial court found his failure to comply with the writ of possession was indirect civil contempt, the trial court's finding and penalty imposed were, in fact, criminal, because the language of the magistrate's decision disclosed an overriding punitive purpose and the sentence itself is "punitive in nature and operates as a punishment for a completed act of disobedience * * * [and] used 'to vindicate the authority of the court.'" (Appellants' Brf., p. 9). Mercure maintains that the penalty imposed by the court below conditions future behavior in a manner more commonly associated with criminal contempt than with civil contempt. Therefore, Mercure claims, it triggered a need to comply with the due process requirements associated with criminal contempt. He urges that as a criminal contemnor his presence was required at the hearing before any penalty for contempt could be imposed. Mercure is mistaken in his interpretation of this record.

{¶19} Contempt has been defined by the courts as the disregard or disobedience of an order or command of judicial authority. See, *First Bank of Marietta v. Mascrete, Inc.*, 125 Ohio App.3d 257, 263, 708 N.E.2d 262 (1998). Contempt may also involve an act or omission that substantially disrespects the judicial process in a particular case. *Byron v. Byron*, 10th Dist. No. 03 AP 819, 2004-Ohio-2143 at ¶11, appeal not allowed by 103 Ohio St.3d 1462, 2004-Ohio-5056, 815 N.E.2d 678. Contempt can be characterized as either direct or indirect. *Id.* at ¶12. Direct contempt occurs when a party engages in conduct in the presence of the court

that interferes with the administration of justice. R.C. 2705.01; *Turner v. Turner*, 10th Dist. No. 98AP-999, 1999 WL 356279 (May 18, 1999). Indirect contempt, on the other hand, occurs when a party engages in conduct outside the presence of the court that demonstrates a lack of respect for the court or its lawful orders. *Byron*, *supra*, citing *State v. Drake*, 73 Ohio App.3d 640, 643, 598 N.E.2d 115 (1991). Failure to comply with court orders, for example, the failure to pay child support, is viewed by courts as indirect contempt, because it occurs outside of the presence of the court but is nevertheless demonstrative of a lack of respect for the court. *DeLawder v. Dodson*, 4th Dist. No. 02CA27, 2003-Ohio-2092, at ¶11.

**{¶20}** Courts may further characterize contempt as criminal or civil, depending on the nature of the contempt sanctions. Criminal contempt imposes sanctions that are punitive in nature, and are designed to punish the party for past failures to comply with the court's order. *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 555, 740 N.E.2d 265 (2001). Criminal contempt usually involves mandatory incarceration, and the party found to be in contempt usually has no opportunity to avoid the incarceration. *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253, 254, 416 N.E.2d 610 (1980).

**{¶21}** Civil contempt, on the other hand, is remedial or coercive in nature, and will be imposed to benefit the complainant. *DeLawder*, *supra*, at ¶9, citing *Pugh v. Pugh*, 15 Ohio St.3d 136, 139, 472 N.E.2d 1085 (1984). Any sanction imposed by the court for civil contempt must provide the contemnor with an opportunity to purge the contempt. *DeLawder*, *supra*, at ¶10. "The contemnor is said to carry the keys of

his prison in his own pocket * * * since he will be freed if he agrees to do as ordered." *Brown*, *supra*, at 253.

{¶22} A trial court's authority to impose sanctions for contempt of court is part of the inherent power of the court to govern proceedings. *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988). Contempt is also defined by statute and penalties are prescribed by R.C. 2705.01 *et seq.*, which provides in pertinent part:

R.C. 2705.02 Acts in Contempt of court. A person guilty of any of the following acts may be punished as for a contempt:

(A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer

* * *

(C) A failure to obey a subpoena duly served, or a refusal to be sworn or to answer as a witness, when lawfully required * * *

R.C. 2705.03 Hearing.

[A] charge in writing shall be filed with the clerk of the court, an entry thereof made upon the journal, and an opportunity given to the accused to be heard, by himself or counsel. * * *

R.C. 2705.05 Hearings for contempt proceedings. (A) In all contempt proceedings, the court shall conduct a hearing. At the hearing, the court shall investigate the charge and hear any answer or testimony that the accused makes or offers and shall determine whether the accused is guilty of the contempt charge. If the accused is found guilty, the court may impose any of the following penalties:

(1) For a first offense, a fine of not more than two hundred fifty dollars, a definite term of imprisonment of not more than thirty days in jail, or both; * * *

The statute governing contempt is silent as to the requirements of service, as is the Ohio Supreme Court caselaw on the subject. However, the Supreme Court has held that "an action brought under R.C. 2705.05 alone may be deemed to be essentially civil in nature." *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253, 416 N.E.2d 610 (1980). Where contempt is civil, the clear and convincing evidentiary standard applies. *Id.* Generally, it appears in practice among the districts that the nature of the proceeding giving rise to the contempt motion, and the nature of the conduct

resulting in the motion, determines the service requirements associated with the contempt motion.

**{¶23}** Mercure mis-cites a Fifth District case, *Bierce v. Howell*, 5th Dist. No. 06 CAF 05 0032, 2007-Ohio-3050, for the proposition that service of a contempt motion on a party's attorney is insufficient notice and that the initial contempt motion must be served directly on the party. This is not the holding in *Bierce*, nor is this an accurate statement of the law. While there is, as is noted in *Bierce*, some divergence among the districts as to the nature of the service required under varying circumstances, the court nevertheless concluded that where contempt is civil in nature, the civil rules regarding notice apply. *Id.* at ¶20, also *Quisenberry v. Quisenberry*, 91 Ohio App.3d 341, 346, 632 N.E. 2d 916 (1993) "[i]nasmuch as there is no specified manner of process required for the filing of a motion for civil contempt, a person serving such a motion may do so in any manner authorized by the Ohio Rules of Civil Procedure."

**{¶24}** The divergences from this principle noted by Mercure and recognized in the Second and Twelfth Districts were due to the fact that the motions filed in those cases were contempt motions seeking enforcement of divorce decrees, sometimes several years after the decree was final. Both courts in this scenario recognized that the contemnor may not have an ongoing relationship with counsel from a divorce that had been concluded. Therefore, the initial motion must be served on the party, not former counsel, as it was in essence a new proceeding. The facts in this case do not merit an enhanced service requirement, nor does the law require it. If in fact the

contempt involved is civil and not criminal, as advanced by Mercure, then the service requirements that apply are those contained in Civ.R. 5. The record here reflects that service was correctly sought and obtained.

**{¶25}** Mercure's assertion that, due to the court's obvious disapproval of Mercure's conduct, the proceeding was inherently punitive and therefore criminal is simply inaccurate. As various courts have noted, "punishment is inherent in contempt, courts will categorize the penalty as either civil or criminal based on the character and purpose of the punishment." *In re J.M.,* 12th Dist. No. CA2008-01-004, 2008-Ohio-6763, ¶47, citing *Brown*, *supra*. The fact that a contempt finding may result in punishment does not necessarily define it as criminal contempt. The instant motion was filed due to Mercure's failure to produce the object of a replevin action, and his refusal during the deposition to provide any information whatsoever that would lead to the current location of the yacht. The penalty imposed by the court could be completely purged by Mercure if he in some way produced the yacht. This is the precisely in line with the coercive nature that defines a civil contempt. Mercure was unquestionably aware of the writ of possession: he had been served with a copy, and was provided with another copy on the record during his deposition.

**{¶26}** The transcript of the deposition, which was in the record for the court to consider when ruling on the contempt motion, reflects Mercure's repeated invocation of his Fifth Amendment privilege in response to any question concerning the current location of the yacht and his interactions with Tillerson. The transcript also reflects that counsel for Appellee contacted Tillerson prior to the deposition and asked about

the location of the yacht. Tillerson responded via email, which counsel produced at the deposition for Mercure to read. In it, Tillerson stated that Mercure had arrived in Texas on January 17, 2009 and had taken the yacht and that he (Tillerson) did not wish to be contacted further concerning the matter. (Mercure Depo., pp. 40-41). Counsel then asked Mercure if he had gone to Texas and retrieved the yacht in January. Mercure invoked the Fifth Amendment. When counsel asked where the yacht was currently located, Mercure invoked the Fifth Amendment. *Id., see also* Home Savings Exhibit I, August 10, 2009.

{¶27} Subsequently, Mercure filed a document entitled "Notice of Efforts to Purge Contempt" concerning his relationship with Tillerson. Mercure's assertions in that affidavit call into question the propriety of his invocation of the Fifth Amendment during the deposition, if they are to be believed. In his notice, Mercure claims that he contacted Tillerson and that Tillerson had responded by threatening to kill him. He said Tillerson also told him that the yacht had been removed from Tillerson's property by "someone" and that Tillerson knew it was being removed, but "did not want to get involved." (Mercure Aff., ¶9.) At no time did Mercure contradict the information contained in the email from Tillerson to counsel in which Tillerson stated that it was Mercure who had, in fact, removed the yacht from Tillerson's property in January.

{¶28} Faced with this contradictory information concerning the extent of Mercure's knowledge concerning the current location of the yacht and his decision to invoke the Fifth Amendment, which in a civil proceeding permits a negative inference, the trial court apparently concluded that Mercure still had knowledge of the yacht's

whereabouts, and accordingly entered a contempt finding. The court's contempt finding in the replevin action was specifically calculated to coerce Mercure to produce the yacht: Mercure was to serve thirty days in jail and pay a fine of $250.00, the statutory penalties for a first time offender, or he could purge his contempt in its entirety by producing the property. This penalty is remedial and allows the contemnor an opportunity to purge his sentence in its entirety. Hence, this contempt is civil in nature, and the civil rules regarding notice apply. *Brown, supra.* at 253; *Bierce, supra*, at ¶20.

{¶29} Finally, as the civil rules of service apply to this contempt motion, service was indisputably perfected on counsel pursuant to Civ.R. 5(A) and (B). Civil Rule 5(A), titled "Service and Filing of Pleadings and Other Papers Subsequent to the Original Complaint," requires "every written motion other than one which may be heard ex parte * * * shall be served upon each of the parties;" part (B) of the rule clarifies "[w]henever under these rules service is required or permitted to be made upon a party who is represented by an attorney of record in the proceedings, the service shall be made upon the attorney." Under Civ.R. 5(B), subsequent to successful service of the complaint, service by mail is complete upon mailing. No return of service is required under the civil rules, under the contempt statute, or under caselaw. No Ohio court has held that personal service is required to perfect a contempt motion, unless personal service is ordered by the court pursuant to Civ.R. 5.

**{¶30}** Despite Mercure's attempt to create confusion around the issue of an alleged failure of service of the contempt motion, this issue was never raised in the trial court, nor does the record support this conclusion. Mercure argues for the first time in his appellate brief that he was not served with the contempt motion, and attempts to point to his November 23, 2009 affidavit as evidence that he never received the initial motion. What the affidavit actually says is "[o]n or about November 18, 2009 I became aware of the fact that a contempt citation had been issued against me in case number 09-CV-1971;" the magistrate's decision finding Mercure in contempt was entered in the record on November 12, 2009 and the docket reflects service by the clerk on November 17, 2009. Given the timing and the language of the statement, it appears that "contempt citation * * * issued against me" refers not to the initial contempt motion but to the November 12, 2009 issuance of the magistrate's decision. The affidavit of service is therefore uncontradicted. Service was complete upon mailing, and Mercure has waived any further due process argument concerning notice by failing to object at the trial level. *State v. Phillips*, 74 Ohio St.3d 72, 74 (1995); *State v. Bidinost*, 71 Ohio St.3d 449, 452 (1994).

**{¶31}** Because the record reflects he was properly served with the contempt motion, the only remaining issues are whether Mercure had sufficient notice of the hearing and if the hearing itself was adequate under the statute. No separate notice period is prescribed by the contempt statute. Mercure advances the proposition that fewer than thirty days is generally unreasonable, citing *Culberson v. Culberson*, 60 Ohio App.2d 304 (1st Dist. 1978); *Erven v. Erven*, 1981 WL 9623 (1st Dist.); and

*Poptic v. Poptic*, 2006 WL 1493262. Again, the determinations in these cases were fact driven: in *Culberson*, the court found that less than thirty days' notice of an ex-husband's contempt motion was inadequate to a divorced wife who had remarried in good faith and moved out of state and where counsel had requested, but been denied, additional time to prepare her defense. In *Erven*, again a post-divorce action, the ex-wife had moved out of state and the record was unclear as to whether she ever received service of the contempt action against her. She was tried in absentia, over the objections of counsel as to the sufficiency of service and the journalization of the underlying order. In *Erven*, the First District applied its *Culberson* holding, passed on the mechanics of service, and found under the circumstances that a 21 day notice of hearing was inadequate. In *Poptic*, again a post-divorce-decree contempt motion, the motion was filed against an out of state spouse, this time in California. The Twelfth District cited *Erven* in support of its finding that six days' notice was unreasonable under the circumstances.

{¶32} In contrast, the Sixth District has found that one day of notice, which was subsequently extended to six total days of notice, is adequate in a municipal court nuisance proceeding. *Ottawa Hills v. Afjeh*, 6th Dist. No. L-10-1353, 2012-Ohio-125. The reviewing court in *Ottawa Hills* distinguished *Poptic* because *Poptic* involved a divorce matter in which the alleged contemnor was in California and the trial court denied the contemnor's request for continuance and instead tried the contemnor in absentia. The contemnor in *Ottawa Hills*, however, was present in this state, and had been notified on September 8, 2010 of a contempt hearing to be held

on September 9, 2010, at which she requested and was granted a continuance until September 15, 2010. She then appeared with counsel at the September 15, 2010 hearing, requested no further continuance, and raised no objection as to notice. Id. at ¶25.

{¶33} The only condition as to notice provided by statute is that it must be "reasonable." No bright line test exists. What constitutes reasonable notice must be evaluated under the circumstances of every individual case. While the Sixth District decision in *Ottawa Hills, supra,* appears to present an extreme end of the spectrum, there exists a wide range of discretion on the part of the trial court. As this is a civil contempt matter and proceedings are governed by the rules of civil procedure where applicable, Civ.R. 6(D) provides guidance as to what constitutes reasonable notice: "[a] written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served not later than seven days before the time fixed for hearing." The motion and notice in question were served on both Mercure and his counsel fourteen days prior to the time fixed for hearing. Both Mercure and his counsel reside in the state of Ohio. Service was made to the address provided by counsel in his notice of appearance and to Mercure at the addresses he provided and confirmed during the deposition, by both regular and certified mail. At the time the motion was served the proceeding was ongoing. No continuance was sought and counsel appeared at the hearing. Although Mercure challenges the reasonableness of the notice provided on appeal, he does not challenge the adequacy of the hearing itself, nor does he explain how he was prejudiced by the

notice provided. As attested by Mercure, his subsequent attempt to purge consisted of a single phone call. There is no indication that this call could not have been made during the initial 14-day period. Under these circumstances, the notice provided was reasonable. Mercure has not raised any defect in the hearing nor has he provided a transcript, and in the absence of evidence to the contrary, "all reasonable presumptions consistent with the record will be indulged in favor of the validity of the judgment under review and of the regularity and legality of the proceeding below." *In re Sublett*, 169 Ohio St. 19, 20, 157 N.E.2d 324 (1959).

**{¶34}** Mercure also argues, in support of his first assignment of error, that due process standards prohibit the court from finding the accused in contempt in absentia. Mercure is mistaken in his assertion. As the court in *Adams v. Epperly*, 27 Ohio App.3d 51, 52, 499 N.E.2d 374 (1985), stated, "[a]mong the rights afforded to both civil and criminal contemnors are notice and an opportunity for a hearing on the matter." (Citations omitted.) The Court in *Adams* concluded that in a criminal contempt, as opposed to a civil contempt matter, the alleged contemnor must not only have the opportunity to be present, he must also actually be present at the criminal contempt hearing. In a civil contempt, an alleged contemnor is entitled only to those rights afforded in a civil action. *Schrader v. Huff*, 8 Ohio App.3d 111, 112, 456 N.E.2d 587 (1983). As is reflected in the language of the statute itself, an opportunity to be heard must be "given to the accused, by himself or counsel." In the instant matter, Mercure was given notice and he was provided a hearing. At that hearing, the court heard and admitted evidence. Mercure elected not to attend;

nevertheless, counsel was present to represent his interests. Hence, Mercure's arguments on this issue lack merit.

**{¶35}** Finally, Mercure posits that the contempt is moot because Appellee was granted summary judgment on its foreclosure claim. Again, Mercure mistakes the law on this matter. Appellee Home Savings is a secured creditor with an extant lien on the collateral; the money judgment on the note does not satisfy or extinguish the property interest in the collateral. The contempt finding in the replevin action on the collateral is independent of the money judgment on the note. While it is true that had the parties settled the underlying suit, or had Mercure successfully defended the replevin action or produced the collateral, or had the underlying suit been dismissed under Civ.R. 41 as was the case in *State ex rel Corn v. Russo,* 90 Ohio St.3d 551 (2001), the contempt would be moot. We note, however, that Appellant mis-cites *Russo* for the proposition that if a suit has settled "or been resolved" the civil contempt is moot. The *Russo* court actually held that the civil contempt was extinguished by the plaintiff's voluntary dismissal of the suit but that the criminal contempt survived. Regardless, in this matter, the entry granting summary judgment on the note does not extinguish the pending writ of possession.

**{¶36}** Final judgment in a replevin action is defined by R.C. 2737.14. "In an action to recover possession of personal property in which an order of possession has been issued, the final judgment shall award permanent possession of the property and any damages to the party obtaining the award. * * * If delivery of the property cannot be made, the action may proceed as a claim for conversion upon

due notice * * *." Although the separate complaint on the promissory note and the motion for writ of possession without hearing were filed at the same time and assigned the same case number, they each have separate remedies and resolutions. The summary judgment motion did not seek disposition of the collateral and the entry granting summary judgment does not address that issue. The magistrate's ruling cancelling the replevin bond specifically notes that it in no way alters the writ of possession that is the subject of the contempt. Under these circumstances, the contempt is not moot because the replevin action is unresolved pending the outcome of this appeal.

{¶37} Mercure extends his argument that the trial court's indirect civil contempt finding was in fact a criminal contempt finding to argue that the trial court imposed a criminal penalty on him for a civil debt in violation of his rights under Article I, Section 15 of the Ohio Constitution, which provides that "[n]o person shall be imprisoned for debt in any civil action, on mesne or final process, unless in cases of fraud." In Mercure's argument he confuses his contempt finding based on his failure to comply with a court order with being sentenced to prison for the nonpayment of a debt. The record clearly reflects that the jail sentence issued by the trial court in this matter was not a punishment for a civil debt, but was instead a statutorily permitted penalty for civil contempt designed to give Mercure an incentive to comply with the trial court's writ of possession. Mercure's failure to comply resulted in a sentence of thirty days of imprisonment, not his failure to pay a civil debt.

**{¶38}** Mercure had notice of the writ of possession. He was informed of the possibility of further adverse action for failure to comply with the writ. He received adequate notice of the contempt motion and hearing. A hearing was held, although he elected not to attend. The penalty imposed by the court was within the parameters allowed for indirect civil contempt and could be fully purged by the production of the property in question. For these reasons, both Mercure's first and second assignments of error are without merit and are overruled.

ASSIGNMENT OF ERROR NO. 3

> MR. MERCURE'S FORMER TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL BY NOT OBJECTING TO THE MAGISTRATE'S DECISION FINDING MR. MERCURE IN INDIRECT CIVIL CONTEMPT AND SENTENCING HIM TO 30 DAYS IN JAIL, WHICH WAS IN VIOLATION OF MR. MERCURE'S DUE PROCESS AND CONSTITUTIONAL RIGHTS.

**{¶39}** While in an earlier case the Ohio Supreme Court decided to the contrary, *In re Calhoun*, 47 Ohio St.2d 15, 350 N.E.2d 665 (1976), an accused contemnor in a civil contempt case does have the right to counsel where incarceration is a possible sanction. *Lassiter v. Dept. of Social Serv.*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). Appellant in the instant matter was represented throughout, and was clearly represented during the contempt hearing.

The right to effective assistance of counsel is part of the due process right to counsel. To prevail on an ineffective assistance of counsel claim Mercure must show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). On review, Mercure alleges that he received ineffective assistance of counsel due to trial counsel's decision to file a notice of efforts to purge contempt instead of filing objections to the magistrate's decision. Mercure urges that there is no strategic reason that could justify a failure to file objections, and that this failure, per se, amounts to ineffective assistance.

{¶40} Under Civ.R. 53(E)(4)(a), a trial court can adopt a magistrate's decision if no objections are filed unless the court determines that there is an error of law or other defect on the face of the magistrate's decision. Mercure does not allege the existence of error or defect on the face of the decision, and our review of the matter does not reveal error or defect. Mercure also fails to identify any error of fact, although he maintains trial counsel should have challenged the sufficiency of his notice of the hearing and the finding that Mercure had the yacht in his possession. As discussed earlier, the notice reflected in the record was sufficient, and Mercure's tardy assertion that he no longer had possession of the yacht was made for the record in his notice outlining his efforts to purge. These assertions, however, were also directly contradicted in the email produced by Appellee. Both were before the court when it adopted the magistrate's decision. As the only defect alleged by Mercure is not found in the record, it is impossible to conclude from the evidence that

counsel's decision to file an affidavit of his efforts to purge rather than objections to the magistrate's decision was patently deficient under the circumstances. Effective assistance of counsel does not require that counsel file every possible motion or objection. The evidence before the court supported a finding of indirect civil contempt, and nothing advanced by Mercure suggests that filing an objection to the magistrate's decision would have substantively altered the outcome. Mercure's third assignment of error is also without merit and is overruled.

## Conclusion

{¶41} The evidence before the court supported a finding of indirect civil contempt. Mercure received sufficient notice of the motion and an opportunity to be heard. His thirty day jail sentence was not imposed for failure to pay a civil debt, but instead, for failure to comply with a court order and he was afforded an opportunity to purge his contempt. Mercure received effective assistance of counsel at the trial level. For these reasons, Mercure's three assignments of error are overruled and the trial court's decision is affirmed in total.

Vukovich, J., concurs.

DeGenaro, J., concurs.